McGinnis *v.* Gailey.

Opinion delivered October 10, 1927.

1. LICENSES—AUTHORITY TO COLLECT MOTOR VEHICLE LICENSE TAX.—
The Harrelson Road Act (Acts Ex. Sess. 1923, p. 66), § 44, impos-
ing the duty on the sheriff as "ex officio collector," to collect motor
vehicle license taxes, being ambiguous as to whether the sheriff
or the county collector, whose offices in Benton County were sep-
arated by Acts 1907, p. 313, shall collect them, must be read in
connection with §§ 40-43 of 1923 act to determine the Legisla-
ture's intention.

2. STATUTES—INTENT OF LAWMAKERS.—In interpreting statutes, the
intent of the lawmakers is the object to be attained.

3. LICENSES—DUTY OF SHERIFF TO COLLECT MOTOR VEHICLE LICENSE
TAXES.—The Harrelson Road Law (Acts Ex. Sess. 1923, p. 66),
§ 44, requiring the sheriff whose office was separated from that of
the county collector in Benton County, by the Acts of 1907, p.
313, to collect the motor vehicle license taxes as "ex officio col-
lector," imposes such duty on the sheriff, not on the county col-
lector, though the former is no longer "ex officio collector," in
view of §§ 40-43 of 1923 act, and Acts 1924, p. 24, which was
enacted to clarify ambiguity, and not to change the collecting
officers.

Appeal from Benton Circuit Court; *W. A. Dickson,*
Judge; affirmed.

*Rice & Rice, W. D. Mauck* and *Homer Pearson,* for
appellant.

*Vol. T. Lindsey* and *Duty & Duty,* for appellee.

HUMPHREYS, J. This is an appeal from a judgment
dismissing appellant's complaint, after sustaining a
demurrer thereto, because it failed to state a cause of
action against appellee. The suit was brought by appel-
lant, collector of Benton County, to recover from appellee,
sheriff of said county, $3,325 received as a commission
for issuing to and collecting license fees from owners
and operators of motor vehicles, during the period
beginning January 1, 1925, continuing until the institu-
tion of the suit. Appellant contends that it was his duty
under the law to issue and collect for licenses to operate
motor vehicles in said county, and that appellee issued
and collected them without authority. Appellant relies.

as a basis for his suit, upon § 44 of act No. 5 of the Extraordinary Session of the General Assembly of 1925, known as the Harrelson Road Law, which reads as follows:

"The duties required by this act of sheriffs in the collection, accounting for and paying over motor vehicle license taxes, are duties to be performed by them in their capacities of ex-officio collectors of all taxes in their respective counties, and their respective official bonds as such collectors shall be liable for the faithful performance of such duties and for truly accounting for and paying over all such license taxes; provided, where such sheriffs, as ex-officio collectors, permit the operation in their counties for a period of thirty days of motor vehicles without licenses, the amount of said license shall be chargeable to said sheriff, paid by him, and his bond liable therefor. Where said sheriff knowingly and willfully permits the operation of motor vehicles for a period of thirty days without collecting said license or making arrest for violation thereof, the said sheriff shall be guilty of a misdemeanor, and, in addition to the penalty provided therein for like misdemeanors, shall be liable to removal from office."

His contention is that the offices of sheriff and collector in Benton County were separated in 1907 by act of the Legislature, and that the sheriff was not ex-officio collector during the period he collected for said licenses, and had no right to collect for them, under § 44 of said act. In other words, appellant's contention is that § 44 authorized him, as collector, to issue and collect for said licenses. The section imposes the duty upon the sheriff, as ex-officio collector, to issue and collect for them. As a matter of fact the collector (appellant) was not ex-officio collector at the time, any more than the sheriff was. He was the collector of said county, and not the ex-officio collector thereof. As the section in question is ambiguous when read alone and literally, in order to arrive at the intention of the Legislature it will be necessary to read the section in connection with the preceding

sections relating to the collection of said licenses. Section 40 of said act reads as follows:

"It shall be the duty of the Commissioner of State Lands, Highways and Improvements to furnish, on or before January first of each year, to the sheriffs of the various counties of this State, application blanks for the registration of motor vehicles. Said application blanks shall be prepared in such form as may appear to the Commissioner of State Lands, Highways and Improvements to be necessary to properly carry out the provisions of this act, and said blanks shall bear serial numbers. The Commissioner of State Lands, Highways and Improvements shall charge to each sheriff the application blanks furnished to him in the same manner as poll-tax receipts are now charged to sheriffs by the Auditor of the State. On or before December 31 of each year each sheriff shall return to the Commissioner of State Lands, Highways and Improvements all application blanks which he may have on hand which have not been issued, and the Commissioner of State Lands, Highways and Improvements shall charge each sheriff the sum of thirty-five dollars ($35) for each unused application blank not returned or accounted for. There shall be printed upon such application blank a receipt to be filled in and signed by the sheriff of the county."

Section 41 of the act provides that any person required to register any automobile, truck or other motor vehicle shall determine the fees required for such vehicle and shall pay to the sheriff in the county in which he shall reside the fee required by this act, whereupon the said sheriff shall execute the receipt printed upon said application blank and shall deliver such blank to such applicant. The sheriff of each county shall retain for service, in addition to his salary, thirty-five cents out of each license fee collected by him. The sheriff shall appoint such number of deputies as may be approved by the county court, whose duty shall be to assist in the enforcement of highway regulations and police rural roads.

Section 42 provides that it shall be the duty of each sheriff to pay into the State Treasury, to the credit of the State Highway fund, all moneys received by him under the provisions of this act, less the amount authorized to be retained by him, within thirty days after its collection.

Section 43 provides that, when the sheriff returns unused application blanks to the Commissioner, he shall issue a complete statement showing the number of applications received by him, the amount of fees received for each, and the Commissioner shall determine from such report whether or not the sheriff has properly accounted for and paid over the proper amount of money, and, if he failed to do so, he shall notify such sheriff, and the Attorney General shall bring suit against the sheriff for the recovery of such money so due. It provides further that the sheriff of each county collecting the registration license fees shall file quarterly reports with the Highway Commissioner of all applications used by him, showing the number of applications and the amount received for same.

It will be observed throughout that the Harrelson Act authorizes the sheriff to issue and collect for the licenses, unless § 44 thereof forbids him from doing so and imposes the duty upon the collector. Even § 44 imposes the duty upon the sheriff, but in the capacity that neither he nor the collector possesses, because the offices of sheriff and collector had been separated by an act of the Legislature. This section can be reconciled with the other sections of the act referred to above by treating the language fixing the capacity in which the sheriff should act, as surplusage, and this is the only way to reconcile the various sections of the act and leave a workable method for issuing and collecting for the licenses.

In interpreting statutes the intent of the lawmakers is the object to be obtained. When §§ 40, 41, 42, 43 and 44 of said act are read together it is quite apparent that the Legislature intended for the licenses to be issued by the sheriff and collected for by him. The same Legisla

ture that passed the Harrelson Road Law, at a special or called session, discovered the ambiguity in the Harrelson Act and attempted to remedy it by enacting the following law:

"An act to amend § 21 of act No. 5 of the extraordinary session of the General Assembly of the State of Arkansas, approved October 10, 1923, by changing the classification of Lafayette County from class G to class D for the distribution of certain road funds to the various counties.

"Be it enacted by the General Assembly of the State of Arkansas:

"Section 1. That the fifth paragraph of § 21 of act No. 5 of the extraordinary session of the General Assembly of the State of Arkansas, approved October 10, 1923, be amended to read as follows: 'The counties whose portion is to be used in the ratio of 50 per cent. for the county highway improvement fund, are as follows: Class D, Carroll, Cross, Faulkner, Jackson, Newton, Saline, Stone, Howard, Washington, White and Lafayette counties.' That the eighth paragraph of said § 21 of said act No. 5 be amended to read as follows: 'The counties whose portion is to be used exclusively for the county highway improvement fund are as follows: Class G, Bradley, Calhoun, Clay, Cleburne, Crawford, Fulton, Grant, Craighead, Greene, Hot Spring, Lee, Logan, Marion, Miller, Mississippi, Nevada, Ouachita, Pike, Scott, Sebastian, Sharp, Union, Lincoln and Benton counties.'

"Section 2. This act involving necessary functions and expenses of State Government, and being necessary for the immediate preservation of the public peace, health and safety, an emergency is declared to exist, and this act shall take effect and be in force from and after its passage. Approved April 9, 1924."

It is contended that the amending act just quoted is void because not one of the subjects included in the Governor's call for the special session. Without deciding that question, the act indicates very clearly that the

Legislature intended in the Harrelson Act to impose the duty of issuing and collecting for State licenses upon the sheriff. The purpose of the amendment was to clarify the ambiguity existing in the Harrelson Act and not to change collecting officers.

No error appearing, the judgment is affirmed.