STATE, USE GARLAND COUNTY, *v.* BALESH.

Opinion delivered October 21, 1929.

*William G. Bouic,* for appellant.

*Martin, Wootton & Martin,* for appellee.

McHANEY, J. This action was instituted by the prosecuting attorney of the 18th Judicial District, under §§ 630 to 643, inclusive, of C. & M. Digest, relating to public auctioneers. The complaint charges that appellee operates a public auction in the city of Hot Springs, No. 350 Central Avenue, at which place various articles of merchandise are offered for sale daily, at public auction, to the highest bidder, and that appellee employs others to sell said goods at auction for him; that neither

he nor his employees have obtained a license as public auctioneers.

Appellee answered, admitting that he conducted the business alleged in the complaint, but denied that he did so in violation of law, and denied that he and his employees were required by law to take out a license.

The case was submitted to the court sitting as a jury, on an agreed statement of facts substantially as follows: Appellee is a resident and taxpayer of Hot Springs, and since 1918 has been selling merchandise in said city, consisting chiefly of Oriental goods, chinaware, linens, antiques and art goods generally, by auctioning same to his customers, instead of the ordinary method of selling over the counter; that he sells only his own goods, in his own storehouse, and not on consignment or for a commission for others; that he has never sold any goods on auction for any other person, and has never held himself out to the public as a public auctioneer to sell real estate or any other kind or class of goods; that he has paid no license as a public auctioneer, nor has he filed any bond with the county court, or rendered any account in writing to any county official of any property sold by him at auction; that he employs such help as he considers necessary, and that some of said employees auction goods for him; and that he pays the city $100 occupation tax, and $300 for the privilege of selling at auction annually.

Under the above facts the court found for appellee, and entered judgment accordingly.

The statute provides, § 630, C. & M. Digest, that: "No person shall exercise the trade or business of a public auctioneer, by selling any goods or other property subject to duty under this law, without a license, to be issued according to law." It will be noticed that the word "public" precedes the word "auctioneer" in this section, and nowhere else in the subsequent sections of the statute does this word "public" appear. It was put there by the Legislature for a purpose, and, in determining what this purpose was, as said in *Bullion* v. *Ætna In-*

*surance Company,* 151 Ark. 519, 525, 237 S. W. 716: "We conceive it to be our duty only to ascertain the legislative intent, and this must be done by interpreting the words which the Legislature itself has employed in expressing that intent. It is an accepted canon of construction that 'where a word which has a known legal meaning is used in a statute, it must be assumed that the term is used in its legal sense, in the absence of an indication of a contrary intent.' 26 A. & E. Enc. of Law (2d ed.) 607." And in *St. L. I. M. & S. R. Co.* v. *State,* 102 Ark. 205, 143 S. W. 913, this court said: "In determining what the meaning of these words ('division point') is, we must look to see what is the usual and ordinary interpretation given to them by those using them, and also to consider them in reference to the subject-matter in the mind of the Legislature, as shown by this statute." The word "public" is here used in its adjective sense. It is an adjective, and modifies and limits the word "auctioneer." It defines the kind of auctioneer who must obtain a license. It is descriptive of the person, and not his business. A number of definitions of "auctioneer" may be found in Words and Phrases, 1st ed., but the substance of all of them is that an auctioneer is a person who sells property at auction. But the word "public" in our statute, as applied to the word "auctioneer," means something more. It means just what it says, that is, a public auctioneer is a person who holds himself out to the public as being willing and ready to sell property at auction. It has the same meaning as the word "public" as applied to accountant, or stenographer—those who are willing to sell their services to the public in their particular line of business. A person might be an expert accountant, and yet do no business for the public, nor hold himself out to the public as being ready to serve it. Certainly such a person would not be a public accountant. The Legislature evidently intended to require all persons who engage in the business of selling property for others at auction, that is, for the public, to obtain a license.

All the cases cited by counsel for appellant construe statutes and city ordinances wholly different from ours. *Biddles* v. *Enright*, 239 N. Y. 354, 146 N. E. 625, deals with a city ordinance of the city of New York prohibiting sales at public auction except in the daytime. The ordinance was sustained. In *Fretwell* v. *City of Troy*, 18 Kan. 271, the court had under consideration an ordinance of the city of Troy providing that, "before any person shall proceed to sell at public auction * * * he shall obtain a license." The court sustained the ordinance. So, in the city of Hot Springs appellee is required to and does pay an annual license fee of $300. In *City of Goshen* v. *Kern*, 63 Ind. 468, 30 Am. Rep. 234, the court held an ordinance of the city valid which provided that "any person who shall exercise, within said city, the business of an auctioneer * * * without having first obtained a license, * * * shall be fined," etc. Also in *Chicago* v. *Ornstein*, 323 Ill. 258, 154 N. E. 100, 52 A. L. R. 489, an ordinance of the city of Chicago was held valid which required auctioneers to be licensed, and which defined an auctioneer as one "who sells goods at public auction for another or for himself." We do not consider these cases as being in point. Our statute deals with "public auctioneers," and not merely "auctioneers," or persons who sell goods, wares, and merchandise at public auction. Appellee sells his own goods, in his own place of business, at auction. He employs others to assist him. He does not sell for others, nor does he hold himself out to the public as ready and willing to do so. Applying the rules of construction above stated, we think the appellee is not a "public auctioneer" and is not required to comply with the statute referred to.

Affirmed.

MEHAFFY, J., (dissenting). I do not agree with the opinion of the majority in this case. The facts are sufficiently stated in the opinion of the majority, and it is unnecessary to restate them.

The majority opinion states: "It will be noticed that the word 'public' precedes the word 'auctioneer' in this section, and nowhere else in the subsequent sections of the statute does the word 'public' appear. It was put there by the Legislature for a purpose, and, in determining what this purpose was, as said in *Bullion* v. *Ætna Insurance Co.*, 151 Ark. 519-525, 237 S. W. 716, we conceive it to be our duty only to ascertain the legislative intent, and this must be done by interpreting the words which the Legislature itself has employed in expressing that intent. It is an accepted canon of construction that 'where a word which has a known legal meaning is used in a statute, it must be assumed that the term is used in its legal sense, in the absence of an indication of a contrary intent.' 26 A. & E. Enc. of Law, 2d Ed. 607."

The majority opinion then says: "The word 'public' is here used in its adjective sense. It is an adjective and modifies and limits the word 'auctioneer.' It defines the kind of auctioneer who must obtain a license. It is descriptive of the person and not his business."

We agree that the intent of the Legislature must be ascertained, but, in ascertaining the intent of the Legislature, we must consider the whole act and not merely a portion of it or one word, but all of it must be considered together, and we must also consider the purpose for which the act was passed; the object of the Legislature in passing it.

It is true that the first section of the statute says: "No person shall exercise the trade or business of a public auctioneer, by selling any goods or other property subject to duty under this law, without a license, to be issued according to law." Crawford & Moses' Digest, § 630.

The act provides that he shall not exercise the trade or business of a public auctioneer, by selling goods or other property, etc., and the section immediately following provides that every person who shall exercise the trade or business of an auctioneer, (this section does

not say public auctioneer), but every person who exercised the trade or business of an auctioneer. That is, every person who sells property at public sale to the highest bidder is exercising the trade of an auctioneer because, according to all the authorities, auctioneer means a person who sells goods at auction; that is, a person who sells goods at public sale to the highest bidder.

Again, § 637 of Crawford & Moses' Digest mentions the property that shall be free of duty and for the selling of which one does not have to have a license as an auctioneer. Among other things, one may sell property of a debtor who has made a general assignment for the benefit of creditors. Also property of deceased persons sold by authority of executors or administrators, and live stock, agricultural productions, etc., sold at the residence of the owner. Also land or leasehold interest sold on the premises.

There is no indication anywhere in the act that one might be permitted to sell his goods at auction, or that it was the intention to make an exception in case where one sold his own goods at auction other than the exceptions made in the statute. When the entire statute is considered, we think the word "public" meant nothing more than an auctioneer who sold goods at public sale.

We all agree that it was the intention of the Legislature in passing this act to protect the public. Can it be said that the public is more likely to be injured or deceived when one sells goods belonging to another at public sale than when he sells his own goods? If there is any difference at all, the public would be more likely to be deceived by the person who is selling his own goods than by a person who is selling the goods of another. The object is to protect the public.

I think, from the reading and consideration of the entire act, that it was the intention of the Legislature to protect the public, whether a person sold his own goods or the goods of another. If the construction placed upon the statute by the majority is correct, then three or four

merchants who desire to sell their goods at auction might very well contract with an auctioneer who would agree to sell at one place at one hour and at another at another, and also agree that he would not act as auctioneer for the public. But this would be a clear evasion of the law, and the object of the law is to prevent all persons from acting as auctioneer and selling goods at auction unless they comply with the law.

This court said recently: "Mr. Chief Justice Taft, in recognition of the duty of the court to consider the act whose validity was in question in the light of the environment in which Congress passed it, said: "It was for Congress to decide, from its general information and from such special evidence as was brought before it, the nature of the evils actually present or threatening, and to take such steps by legislation within its power as it deemed proper to remedy them. It is helpful for us, in interpreting its validity, to know the conditions under which Congress acted." *Hill* v. *American Book Co.*, 171 Ark. 427, 285 S. W. 20.

So, in the instant case, it is helpful for us, in interpreting the statute, to know the conditions, and especially the object of the Legislature in enacting the statute.

"Such a construction ought to be put upon a statute as may best answer the intention which the makers have in view, and this intention is sometimes to be collected from the cause or necessity of making the statute, and sometimes from other circumstances; and, whenever such intention can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to the letter of the statute. And such construction ought to be put upon it as will not suffer it to be eluded." *Turner* v. *Ederington,* 170 Ark. 1155, 282 S. W. 1000.

"The primary object in the construction of statutes is to determine what purpose or intent the Legislature had in mind in passing the statute, from the language used, and to give effect to that purpose or intent."

*Cowan* v. *Thompson,* 178 Ark. 44, 9 S. W. (2d) 790; *McGinnis* v. *Gailey,* 174 Ark. 174, 298 S. W. 335.

"This court has uniformly held that, in the construction and interpretation of statutes, the intention of the Legislature is to be ascertained and given effect from the language of the act, if that can be done. In doing this, each section is to be read in the light of every other section, and the object and purpose of the act to be considered." *Miller* v. *Yell and Pope Bridge Dist.,* 175 Ark. 314, 299 S. W. 15; *Ark. State Highway Com.* v. *Kirby,* 175 Ark. 652, 298 S. W. 335.

"The intention of the Legislature in framing a statute is to be collected from the words used, the context, the subject-matter, the effects and consequences, and the spirit and reason for the law." *Breashears* v. *Norman,* 176 Ark. 26, 2 S. W. (2d) 53.

"In deciding this question we have in mind the settled rules of construction that a statute must be read as a whole to ascertain its meaning, and courts must give effect to the meaning of the statute as thus ascertained, and in the discharge of this duty courts are frequently required to eliminate or to substitute words for those employed by the Legislature." *Indian Bayou Drainage Dist.* v. *Dickie,* 177 Ark. 728, 7 S. W. (2d) 794.

It appears to us that there could be no disagreement about the object and purpose of the Legislature in passing the statute, and, keeping that in view and considering the entire act, we are of opinion that the Legislature meant to require everyone, except those embraced in the exceptions of the statute, to get a license before he could sell goods at auction.

The majority opinion says that "public" means the same thing that it would to say public stenographer or accountant; that is, those who are willing to sell their services to the public in their particular line of business, and states: "A person might be an expert accountant and yet do no business for the public, nor hold himself

out to the public as being ready to serve it. Certainly such a person would not be a public accountant.''

We do not agree with the majority in this. In the first place, the statute providing for an examination and registration of public accountants says that one may be a public accountant and serve the public as such without paying any fee or taking any examination. It, of course, prohibits him from claiming to be a certified public accountant when he is not.

The majority opinion says: ''All the cases cited by counsel for appellant construe statutes and city ordinances wholly different from ours.'' We do not think so, but think that some of them are similar to our statute, if not exactly like it.

The first case to which the majority opinion calls attention is *Biddles* v. *Enright,* and that was under a New York statute and prohibited the selling of goods by auction at night. But the court said in that case: ''It is a reasonable effort to insure fair public sales, to prevent fraud and deception, and to protect purchasers from the dangers lurking in the darkness of the night.  *  *  * Then again, the business of an auctioneer, while perfectly legal, has always been affected with a public interest and subject to legislative restriction.'' *Biddles* v. *Enright,* 239 N. Y. 354, 39 A. L. R. 766, 146 N. E. 628.

In the New York case the auctioneer was selling his own goods, and not the goods of another.

In the case of *Fretwell* v. *Troy,* 18 Kansas 271, the court not only sustained the city ordinance, but that ordinance, like our statute, had two sections. One of them referred to the auction, and the other to the auctioneer. And the court said: ''Do these two sections reach to the same matter, so that obtaining a license under one, is equivalent to a license under both, and a bar to any prosecution under either? We think not. There is a clear distinction between the two. The one applies to the party who has goods which he desires to dispose of by auction, and the other to the party who

makes the out-cry. The same party may occupy both positions. He may have goods to sell at auction, and he may be his own auctioneer.''

The ordinance is not only similar to our statute in the two sections, but in that case the auctioneer was selling his own goods, just as the appellant in this case.

The majority opinion disposes of the case of *Goshen* v. *Kern*, 63 Ind. 468, 30 Am. Rep. 234, simply by stating that the court held the ordinance of the city making a person liable who exercised the business of an auctioneer without license valid. However that is another case which holds that an auctioneer must have license to sell his own goods. That case gives the definitions found in the dictionaries of auctioneer, and all of them define auctioneer as a person who sells by auction, or sells goods publicly to the highest bidder, and some of them state outright that an auctioneer is a person who sells at public auction his own goods or the goods of another. That court said also: ''And the owner of the property to be sold will not and does not, in our opinion, affect, impair, or prevent the exercise of these powers in any respect. The power given is in the nature of police regulation, and it applies to all sales by auction, as well to those where the auctioneer sells his own property as to those where he sells the property of other persons.''

The next case to which the majority opinion calls attention held as follows: ''The object of the regulation is to promote the general welfare by protecting the public from fraudulent sales, and this protection is needed as much, if not more, where the auctioneer is selling his own goods as where he is selling the goods of another.'' *Chicago* v. *Arnstein*, 323 Ill. 328, 154 N. E. 100, 52 A. L. R. 489.

The Missouri court held valid an act which prohibited any person from exercising the trade or business of public auctioneer by selling any goods, or other property subject to duty under this law, without a license. There were exceptions to the statute there the same as

ours, but the defendant was selling tobacco and tobacco was not included in the exceptions. That is, the sale of tobacco was not free of duty. The defendant contended in that case that to be guilty he must be proved to have followed the business for a livelihood or for support. But the court held that this was not a defense. *State* v. *Rucker,* 24 Mo. 557.

I think, therefore, that the object and purpose of the Legislature in passing the act was to protect the public, and that therefore sales by the owner of goods cannot be lawfully made at public sale any more than the sale of the goods for others. It is immaterial whose goods they are if they are sold at auction, and not within the exceptions mentioned in the statute. The auctioneer who makes the sale must have a license.

I also think, when the entire act is considered and construed according to the rules adopted by this court, taking into consideration not only the entire act, but the purpose of it, that "public" before "auctioneer" means nothing more than selling at public sale, and that the case should be reversed.

Mr. Chief Justice HART and Mr. Justice HUMPHREYS agree with me in the conclusions herein reached.