### Casey *v.* Smith.

Opinion delivered February 15, 1932.

*Gentry & Gentry, Carrigan & Monroe, Lemley & Lemley, John P. Vesey* and *W. S. Atkins,* for appellant.

*O. A. Graves,* for appellees.

Mehaffy, J. Appellant, as a citizen and taxpayer, began this suit in the Hempstead Chancery Court against

the appellees, as directors of the Hope Special School District, praying that they be enjoined and restrained from incurring any further indebtedness or borrowing any money or issuing any warrants as directors of said district during the present fiscal year, except as may be necessary to pay the principal and semiannual interest payments, maturing on bonded indebtedness during the present fiscal year.

He alleged that on March 25, 1931, the bonded indebtedness of the district exceeded 7 per cent. of the total assessed valuation of all the real and personal property in said district, as shown by the last county assessment, and that said bonded indebtedness had been at all times since then, and is now, in excess of 7 per cent. of the assessed valuation of all property in said district. He alleged that the total non-bonded indebtedness, July 1, 1931, was $80,200, and that this was the maximum amount of said nonbonded indebtedness during said year, and all of this amount had been paid out of the year's revenue except $25,000.

He further alleged that the nonbonded indebtedness and the amount set aside to pay principal and interest on the bonded indebtedness, falling due the remainder of the fiscal year, is $63,000, and that the total revenues which will be received by said district during the remainder of the fiscal year will not exceed $63,000.

He alleged that the directors were still operating the schools and incurring further indebtedness, and that, in order to complete the school term, it would be necessary to incur further indebtedness, so that at the end of the present fiscal year, the nonbonded indebtedness of the district will aggregate $80,200 and that the directors proposed to continue the schools and incur other indebtedness until it aggregated $80,200, and, unless restrained, they would borrow from individuals and banks, or from next year's revenues, and issue warrants therefor, to the amount of $80,200; that this sum would be in excess of the revenues for the remainder of the present fiscal

year, and the next succeeding fiscal year, thereby causing plaintiff and other taxpayers to suffer great and irreparable loss, and that he has no adequate remedy at law.

He alleged that the district did not have power to do these things, and that the borrowing of money, as the directors proposed to do, was in direct violation of act 169 of the Acts of the General Assembly of 1931.

The appellees demurred to the complaint, stating: "First. The complaint does not state facts sufficient to constitute a cause of action.

"Second. The complaint does not state facts sufficient to entitle plaintiff to any of the relief prayed for therein."

The court sustained the demurrer, and appellant refused to plead further, and his complaint was dismissed. The case is here on appeal.

At the time act 169 was approved, the Hope Special School District had issued bonds, exclusive of interest, to the extent of 7 per cent. of the assessed valuation of the real and personal property in the district as shown by the last county assessment. The outstanding nonbonded indebtedness of the district was $80,200 on July 1, 1931. This sum was the maximum nonbonded indebtedness during the fiscal year preceding July 1, 1931.

The revenues of the district for 1931, 1932 were used by the district in the payment of the nonbonded indebtedness existing prior to July 1, 1931, reducing the nonbonded indebtedness to $25,000, and the schools had been operating by anticipating the revenues of 1932-1933.

The directors propose to continue the school for the term by borrowing from banks, individuals, or from next year's revenue, but not to exceed $80,200, maximum nonbonded indebtedness in the fiscal year ending July 1, 1931.

Act 169 provides that districts may borrow money and issue bonds for the repayment thereof from school funds, for the building and equipment of school buildings, making additions and repairs thereto, purchasing

sites therefor, and for funding any indebtedness created for any purpose and outstanding at the time of the passage of the act. Act 169, § 59, of the Acts of 1931.

Section 60 provides that: "No bonds shall be issued at any time that would make the total of outstanding bonded indebtedness of the district at that time, exclusive of interest, exceed 7 per cent. of the assessed valuation of the real and personal property in the district as shown by the last county assessment. This shall not prohibit bond issues refunding present bonded indebtedness that exceeds 7 per cent."

It is first contended by appellant that the board of directors has no authority to borrow money for the operation of the schools. He cites and relies on *Arkansas National Bank* v. *School District No. 99,* 152 Ark. 507, 238 S. W. 630, where the court said: "It is the settled rule in this State that school districts have and can exercise only such powers as are expressly granted, and such incidental ones as are necessary to make those powers available and effective."

Attention is called to some other cases, but it may be stated as the settled rule announced in all the cases, that school districts can exercise only such powers as are granted by the Legislature and such incidental powers as are necessary to the proper exercise of the powers granted. School districts derive all of their powers from the Legislature.

It is contended by the appellant that § 59 of act 169 of 1931 provides that the only power granted to borrow is for the things mentioned in said section, namely the building and equipment of school buildings, making additions thereto, purchasing sites therefor, and for funding any indebtedness created for any purpose and outstanding at the passage of the act. If this contention of appellant were correct, the board of directors would, of course, have no power to borrow money to operate the schools.

Section 97 of act 169, however, provides among other things: "Budgets for districts, having a city of 2,500

or more population, which employ a superintendent, shall be approved by the city superintendent and need not be submitted to the county board of education for approval, but shall be filed with the county superintendent for record, provided nothing in this provision shall prevent any school board from borrowing money from banks, individuals, or from next year's revenue, in order to provide funds in such amount that the maximum nonbonded indebtedness of their school district so incurred shall not be greater than the maximum nonbonded indebtedness of such districts was at any time during the preceding fiscal year.''

To ascertain the intention of the Legislature, we must consider the whole act, and each part or section must be construed in connection with every other part or section, so as to produce a harmonious whole. The part of § 97 quoted must mean something, and another portion of § 97 provides that in case of an emergency the State Board of Education may grant special permission to a district to create a temporary current indebtedness.

It was evidently the intention of the Legislature, among other things, to prohibit school districts from increasing their indebtedness, and, as stated in the act, the districts should conduct their financial affairs, so that, as soon as possible, they may be on a cash basis.

It is therefore provided in the act that, if it should become apparent that the schools cannot be operated for the remainder of the school year, without incurring more indebtedness than that represented by outstanding bonds and those that may be issued for buildings and the equipment, purchasing sites and repairing buildings, or the improvement of sites, it shall be the duty of the school directors to close the school, and cease paying teachers for the remainder of the year.

However, following this provision of the statute is another we have already referred to, which authorizes the State Board of Education to permit a district to create temporary indebtedness. Evidently it was not the inten-

tion of the Legislature to close the schools if this could be avoided. It therefore provided that permission might be given the districts to create temporary indebtedness to keep the schools going.

As we have already said, in construing statutes it is the duty of courts to ascertain the intention of the Legislature and to give effect to every part and section of the law. *Miller* v. *Yell & Polk Bridge Dist.*, 175 Ark. 314, 299 S. W. 15; *Hall* v. *Cartwright*, 179 Ark. 1082, 20 S. W. (2d) 124; *McDaniel* v. *Ashworth*, 137 Ark. 280, 209 S. W. 646; *Manley* v. *Moon*, 177 Ark. 260, 6 S. W. (2d) 281; *Ark. Tax Commission* v. *Crittenden County*, 183 Ark. 738, 38 S. W. (2d) 318; *Gill* v. *Saunders*, 182 Ark. 453, 31 S. W. (2d) 748; *McIlroy* v. *Fugitt*, 182 Ark. 1017, 33 S. W. (2d) 719, 73 A. L. R. 723; *McGinnis* v. *Gailey*, 174 Ark. 1062, 298 S. W. 335; *Summers* v. *Road Imp. Dist. No. 16*, 160 Ark. 371, 254 S. W. 696; *Miller* v. *Witcher*, 160 Ark. 479, 254 S. W. 1063.

It is next contended by the appellant that the borrowing power of a district is limited to next year's revenue. We do not agree with appellant in this contention. The act expressly limits the borrowing power to the maximum nonbonded indebtedness at any time during the fiscal year. In the instant case the maximum amount was $80,200, and the power to borrow money under this provision of the statute is limited by this amount. The law provides that the district may borrow from next year's revenue or from individuals or from banks, but the amount the district is permitted to borrow is not limited by the amount it might be able to borrow from any individual, or a bank, or next year's revenue, but it is expressly limited to the maximum amount of the nonbonded indebtedness the preceding year.

The decree of the chancery court is affirmed.