# Kentz *v.* City of Mobile.

*Action by City to recover License Tax.*

1. *License tax; right of city to levy same upon vehicles.*—The General Assembly has the power to confer upon a municipality the authority to impose a license tax on vehicles used within the corporate limits, for the transportation of goods, and when such tax is lawfully imposed by a valid ordinance, it is valid and enforceable.

2. *Same; construction of municipal ordinance levying vehicle tax.* Where, in the lawful exercise of the power granted by its charter a municipality passes an ordinance imposing, in addition to the license tax for carrying on a business, trade or profession in the city, a vehicle license tax on "drays, wagons and vehicles used in the transportation of goods, wares and merchandise and vehicles used for hire at public stands," and fixes the amount of such vehicle license tax at seven dollars and fifty cents ($7.50) for each vehicle so used, such ordinance is not subject to the objection that the tax so imposed was levied against the vehicles themselves and not against the persons owning them; since by fixing the tax at so much for each vehicle, the ordinance simply provides the means for ascertaining the tax to be imposed against the owner.

[Kentz v. City of Mobile.]

3. *Same; same; living outside the city limits does not exempt owner of vehicles from tax.*—The mere fact that one, who owns and uses wagons for hauling and delivering manufactured products to customers in a city, lives and manufactures such products without the corporate limits of the city, does not exempt such person from a license tax imposed by lawful ordinance of said city upon persons keeping wagons and other vehicles to be used in the transportation of goods and merchandise within said city; and this is true, even though such person charges no extra fee for hauling the manufactured products and derives no profit therefrom.

4. *Same; unreasonableness of vehicle taxes.*—A city license tax of $7 50 per annum for each dray, wagon or vehicle used in the transportation of goods and merchandise in said city, cannot be said to be unreasonable.

5. *Constitutionality of the city charter; effect of provision requiring recorder to be learned in the law.*—While the provision in one of the sections of the charter of a city, that the recorder provided for therein shall be learned in the law and a practicing attorney at the time of his election, is unconstitutional and void as violative of section 2 of Article I of the Constitution. investing all citizens of the State with equal civil and political rights, yet, when such offensive clause is distinct and separable from other provisions of the section of the act in which it occurs, and when stricken out does not affect the other provisions of the act, such unconstitutional provision does not render the whole section of the act unconstitutional and void; and if the other portions of the act are unobjectionable, it will not be declared void, but the purpose of the legislature will be given effect by rejecting the clause offensive to the constitution.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by the City of Mobile, the appellee, against the appellant, Joseph Kentz.

The complaint charges that Joseph Kentz, the appellant, violated an ordinance of the city of Mobile, known as the license ordinance, which required every firm, association or corporation, trading or carrying on any business, trade or profession, by agents, or otherwise, within the limits of the city of Mobile, to pay a license as in said ordinance fixed. The ordinance and sections thereof involved in this controversy, which were set forth in the complaint and introduced in evidence, were as follows:

[Kentz v. City of Mobile.]

"An ordinance to fix the rate of licenses for the year commencing March 15th, 1897.

"Section 1. Be it ordained by the mayor and general council, that a license tax for the fiscal year, beginning on the 15th day of March, 1897, and ending on the 14th day of March, 1898, is hereby imposed and assessed on each person, firm, association or corporation trading or carrying on any business, trade or profession, by agent or otherwise, within the limits of the city of Mobile; and the same is hereby fixed for such business, trade or profession, as follows, to-wit: ·

"Section 2. Drays, wagons and vehicles used in the transportation of goods and merchandise, and vehicles used for hire at the public stands $7.50."

"Section 7. Be it further ordained, that each and every license in this ordinance declared is due and payable on the 17th day of March, 1897, and the tax collector will proceed to collect the same. Whenever any person shall fail or refuse after publication of this ordinance to obtain a license under the provisions of the same, he shall be fined in such sum as the Recorder may impose, not exceeding fifty dollars, nor less than five dollars, for each day's failure to obtain such license."

The complaint alleges and the evidence shows that said ordinance was published in the Mobile Daily Register, a newspaper of the city of Mobile, on March 18, 1897; and on July 13, 1897, and also within thirty days of July 13, 1897, the defendant, Joseph Kentz, violated said ordinance by using three wagons upon the streets of the city of Mobile for the transportation of goods, wares and merchandise, which said wagons were kept and used by said Kentz in the business of transporting goods and merchandise, without procuring a license for each of said wagons, as required by said ordinance.

The complaint also alleges that for the violation of said ordinance by defendant, the recorder of said city, on the 13th day of July, 1897, duly and lawfully imposed on said defendant a fine of fifteen dollars ($15.00), whereby the defendant became and is liable to pay the said sum of fifteen dollars. The defendant pleaded not guilty to said complaint.

40

· The cause was submitted to the jury upon the license ordinance in question, and upon an agreed statement of facts which is set out in the bill of exceptions, and which contained the following recital of facts : "The defendant is engaged in the manufacture of brick, at a place outside of the corporate limits of the city of Mobile, and has no office or agent within the corporate limits of the city of Mobile. The defendant uses three wagons to deliver brick to such persons as may purchase same of him at places within and without the corporate limits of the city of Mobile. The wagons are used exclusively in carrying the brick from the place where the same is manufactured outside of the corporate limits of the city of Mobile to such places within or without the corporate limits of the city of Mobile as the purchaser may direct, and when delivered to places within the city of Mobile, said wagons used the streets of the city of Mobile for that purpose after the eighteenth day of March, 1897. Defendant makes no charge against a customer for the use of the wagons and derives no profit from their use. Defendant sells brick to those who receive it at his place of business at the same price at which he sells it to those to whom he delivers it with said wagons. It is the custom of other manufacturers of brick, in and about the city of Mobile, to deliver brick purchased of them to the purchaser at such place as he may designate, without additional charge. The use of said wagons is an item of expense to the defendant in the conduct of his business. The license ordinance hereto attached is a true copy of the ordinance of force in said city on the 13th day of July, 1897, and it is the ordinance under which said city proceeds in said cause against defendant. Said ordinance was published in the 'Mobile Daily Register,' a newspaper published in the city of Mobile, on March 18. 1897, and is herewith made a part of this agreed statement of facts. · The value of the wagon is about $30, the amount of the license, including the brass tag to be placed on the wagon, demanded of the defendant is $7.75. The cost of issuing the license does not exceed· twenty-five cents. The license demanded of the defendant is, when collected, not applied to any particular purpose, but is paid into the general city fund, and is ap-

[Kentz v. City of Mobile.]

plied, together with collections from other sources, to general and municipal purposes. The greater part of the brick manufactured by the defendant is delivered to purchasers in the corporate limits of the city of Mobile. The weight of each load of bricks is about 2,000 pounds."

The facts as stated in the agreed statement of facts was all the evidence introduced. Thereupon the court, at the request of the plaintiff, gave the general affirmative charge to the jury in its favor. The defendant duly excepted to the giving of this charge, and also duly excepted to the court's refusal to give the general affirmative charge requested by him.

There were verdict and judgment for plaintiff. The defendant appeals, and assigns as error the giving of the general affirmative charge asked by plaintiff and the refusal to give a similar charge requested by the defendant.

McINTOSH & RICH, for appellant.—The authority to impose taxes and penalties conferred by the State upon municipal corporations must be strictly construed and all doubts resolved against the municipality and in favor of the people.—25 Amer. and Eng. Encyc. of Law, 482–5; Sutherland on Statutory Construction, § 365; Cooley on Taxation, 200; *Lott v. Ross & Co.,* 38 Ala. 156; *Joyce v. East St. Louis,* 77 Ill. 156.

Given the strict construction demanded by the universally recognized rule on this subject, the City of Mobile would only have authority to impose fines and penalties for the failure to take out a license upon such persons as had carried on a *business, trade or profession* by agent or otherwise within the city of Mobile. The undisputed proof is, that the defendant used three wagons to deliver brick to parties living within the limits of the city of Mobile, and that for the use of said wagons he made no charge, and neither expected to receive nor sought to derive any revenue or profit from their use. The agreed statement of facts exclude any idea of trade or business as defined by this court.—*Moore v. State,* 16 Ala. 413; *Eubanks v. State,* 17 Ala. 183; *Weil v. State,* 52 Ala. 20.

The license sought to be collected from appellant is a tax on the property of appellant, unauthorized, illegal

[Kentz v. City of Mobile.]

and void. The ordinance imposing a license for reve-
nue upon the use of a vehicle not used for profit, is in
controvention of a common right, unreasonable and void.
17 Amer. & Eng. Encyc. of Law, 253.

The license is imposed upon "drays, wagons and ve-
hicles used in the transportation of goods and merchan-
dise," and not upon persons engaged in such business.
It applies as well to the vehicle of the person who pur-
chases as to one who sells the goods and merchandise.
Any vehicle used by the citizen to transport the articles
of household necessity from the store in the city at which
they are purchased to his home within or without the
city of Mobile is subject to this tax. The State of Ala-
bama may, within constitutional limitations, impose a
tax upon the property of the citizen according to its
value, and it may, also, impose a license tax upon any
occupation the citizen may pursue. This power it may
also delegate to the municipalities of the State, but
neither has the power to tax the common rights of the
citizen. The right of the citizen to move his property
from place to place as his necessities and convenience
may dictate is a common right, and neither this right
nor the usual and ordinary agencies by which it is ac-
complished can be lawfully made the subject of a license
or occupation tax levied for purposes of revenue. The
license in question is imposed for revenue. It can not
be justified as a police regulation, because the amount
exacted is so unreasonably disproportionate to the cost
of issuing the license.—*Van Hook v. Selma*, 70 Ala. 364.
Statutes authorizing the imposition of license taxes by
municipal corporations must be strictly construed, and
all doubts resolved against the municipality in favor of
the people.—25 Amer. & Eng. Encyc. of Law, 485;
Sutherland on Statutory Construction, § 365; *Lott v.
Ross & Co.*, 38 Ala. 156; Cooley on Taxation, 200.

Section 6 of the Act "To provide a charter for the
city of Mobile," creating the office of Recorder, is un-
constitutional, illegal and void. The alleged Recorder
was without authority to impose the fine upon appellant
and the alleged judgment is a nullity.

Section 6 of the act "To provide a charter for the city
of Mobile," provides for the election of a recorder and

other city officers, and prescribes the term of such offi-
cers. Then follows this provision relative to the office
of recorder : "*Said Recorder shall be learned in the law and
a practicing attorney at the time of his election,*" &c.—Acts,
1896-97, § 6, p. 547. The act by its terms excludes from
eligibility all persons except practicing attorneys at the
time of election. This provision of section 6 is violative
of section 2 of Article I of the Constitution.—*Ex parte
Dorsey*, 7 Port. 293 ; *State v. Denny*, 21 N. E. Rep. 284 ;
Cooley on Con. Lim., pp. 79, 483, 753. The constitution,
by fixing qualifications for certain offices, has, by clear
implication, prohibited the fixing qualifications for other
offices, either those named in the constitution, or those
created by legislative enactment.—*Page v. Hardin*, 47
Ky. (8 B. Monroe) 648 ; *State v. George*, 3 So. Rep. (Fla.)
81 ; *Ex parte Dorsey*, 7 Port. 293 ; *Barker v. People*, 3 Cowen
(N. Y.) 703 ; *Wright v. Noell*, 16 Kan. 601.  ⸱

B. B. Boone, *contra*.—This court is firmly committed
to the doctrine that a section of an act, or a portion of a
section of an act, can be stricken out and the remainder
upheld, as shown by its decisions in the following cases :
*Powell v. State*, 69 Ala. 10 ; *McCreary v. State*, 73 Ala. 480.
See also *Packet Co. v. Keokuk*, 95 U. S. 80 ; *Unity v. Burrage*,
103 U. S. 459 ; *Penniman's Case*, 103 U. S. 717 ; *Presser v.
Illinois*, 116 U. S. 252. The following decisions also
support the proposition that even where the constitu-
tional and unconstitutional provisions are contained in
the same section, that if they are distinct and separable,
so that one may stand and the other fall, the constitu-
tional portion remains unaffected, and that the only
question is, whether the several provisions are essentially
and inseparably connected in substance.—*Hagerstown v.
Dechert*, 32 Md. 369 ; *Commonwealth v. Hitchings*, 5 Gray
(Mass.) 485 ; *Robinson v. Bidwell*, 22 Cal. 379 ; *Eells v.
People*, 4 Scammon (Ill.) 512 ; *State v. Exnicios*, 33 La.
Ann. 253.

The right to impose taxes sought to be collected in
this case was conferred by the act of the General Assem-
bly providing a charter for the city of Mobile.—Acts of
1896-97, p. 574.

[Kentz v. City of Mobile.]

The policy of the legislature seems to have been to confine the license tax on vehicles, whether imposed under the police or taxing power, to such of them as are used in the transportation of goods and merchandise, and those kept for hire, and to relieve all other carriages from such a tax.—*Memphis v. Battaile*, 8 Heisk. 524; *Ex parte Gregory*, 54 Amer. Rep. 516; *Davis v. Petrinovich*, 112 Ala. 660; *Gartside v. East St. Louis*, 43 Ill. 47; Horr & Bemis on Municipal Ordinances, § 143.

The fact that the defendant moved out of the city limits and manufactured the brick outside of the city did not exempt him from the license tax, so long as he used his wagons to deliver the brick within the city. The license tax required of the appellant Kentz, is not unreasonable and should not be declared void on that account. 2 Beach on Public Corporations, § 1255; *Ex parte Gregory*, 44 Amer. Rep. 524, citing *Van Hook v. Selma*, 70 Ala. 363.

HARALSON, J.—The new charter of Mobile (Acts, 1896-97, p. 542) in section 28 bestows on the general council of the city, for the purpose of carrying on the government of the city under its charter, the power to levy and collect a tax, each year, upon all the real and personal property, and all subjects of State taxation, within the city, not exceeding six-tenths of one per cent.

Section 43 provides, that the general council shall, "besides the tax heretofore authorized [under said section 28], have the authority to levy and collect from all persons and corporations, trading or carrying on any business, trade or profession by an agent or otherwise within the limits of said corporation, a license tax which shall be fixed and declared each year by ordinance of said corporation," and also, in addition to the license tax, it was provided, that "a vehicle license may be imposed in addition to business license, provided that said license shall only apply to vehicles used in the transportation of goods or merchandise and vehicles used for hire at the public stands." In *Davis v. Petrinovich*, 112 Ala. 654, after careful consideration, we sustained a vehicle license tax, as a valid exercise of the power competently

bestowed by the legislature, and we need not here repeat what was then said and afterwards more elaborately discussed and sustained in the case of *Phoenix Carpet Co. v. The State*, 118 Ala. 143.

But, granting this power, it is objected that the tax was levied in this case against the vehicles themselves, and not against the persons owning them, and, therefore, it is a property tax. The ordinance of the city, itself, in section one, imposes a license tax on the persons carrying on business, trade or profession in the city, and the same, as the ordinance states, is hereby fixed for such business, trade or profession as follows :—naming many trades and occupations and the license tax for each, one item being : "Drays, wagons and vehicles used in the transportation of goods and merchandise, and vehicles used for hire at the public stands, $7.50." It it manifest that the business or occupation tax referred to is required to be determined by the number of drays or vehicles that are used in the transportation of goods, and that the number of drays and other vehicles are referred to, not to impose a tax on them as property, but simply, to arrive at a proper ascertainment of the just amount of the license tax in each particular case. A party engaged in business in the city, and employing drays or other vehicles for the transportation of their merchandise, or parties using vehicles at the public stands, may use one or many of them, and different persons may use more or fewer of them than other persons engaged in the same business. The number so used, therefore, was a proper, and perhaps as good a basis for determining the amount to be paid for the license to do the business, as any other—if not the best. The defendant below was not shown to have paid or been assessed for any other business tax than such as was imposed on the wagons he employed in his business in the city.

It is objected, again, that the defendant lived outside the corporate limits of the city, there manufactured his brick, and employed his wagons in hauling and delivering his brick in the city to persons who bought them; charged no extra fee for hauling them, and derived no profit thereby, except such as accrued incidentally from the sale and delivery of the brick. He was no more ex-

empt from such a tax than peddlers, brokers, factors, hackmen and others, who are required to procure a license to exercise their various callings and pursuits, all of whom are required to submit to reasonable exactions; and the city being required to keep its streets in repair, it is but reasonable and just that those who use them with their vehicles, in carrying on a business in the city, whether they reside in its corporate limits or not, shall contribute to their repair by submitting to a reasonable sum for a license.—*Gartside v. City of E. St. Louis*, 43 Ill. 47.

· The city of Memphis claimed under its charter the right to demand a license tax under an ordinance as follows: "Every owner of a wagon or other vehicle, kept or used for free delivery of goods to customers or others in the city, for each vehicle *per annum*, $10." A rolling mill for the manufacture of bar iron, near Memphis, but outside the corporate limits of the city, owned some drays kept at the mill, which were used in the free delivery of iron manufactured at the mill to their customers and merchants within the corporate limits, and the defendants, themselves, lived near the mill outside the corporate limits. A license tax for thus using the drays was demanded of them by the city. The Tennessee court, held, and as we think properly, that the fact that the defendants resided and had their iron works outside the city made no difference; that they exercised the privilege of selling their goods in the city, and in so doing used its streets, and were properly assessable with a privilege or business tax.—*City of Memphis v. Battaile & Co.*, 8 Heis. 524; 1 Rich. L. 364; Horr & Bemis on Mun. Ord., § 143.

Still again it is insisted, that the tax of $7.50 on each of defendant's wagons was unreasonable, but we think not. The value of the wagons, certainly, would not be a fair criterion to determine the amount of the tax to be levied. As much business may be carried on and as much use of the streets may be made, and as much damage done to them, by wagons worth no more than defendant's were said to be worth—$30 each—as by vehicles of far greater value. The number of vehicles one employs is a better and fairer criterion of what the tax ought

to be, than their value. The money arising from license tax appears to be for revenue, as is required by the charter, section 44, to be paid in bank to the credit of the general council, to be drawn out and used by them only, in such sums and at such times as the same shall be actually required, and only for the expenditures of the city authorized by law.—*Van Hook v. Selma*, 70 Ala. 363.

The only other questions remaining are such as arise out of the alleged unconstitutionality of that part of the 6th section of the city charter, which, providing for the election of a recorder among other officers, directs that "Said recorder shall be learned in the law and a practicing attorney, at the time of his election." In the Declaration of Rights—section 2 of Art. 1 of the constitution of this State—it is provided, "That all persons resident in this State, * * * are hereby declared citizens of the State of Alabama, possessing equal civil and political rights." Under this provision, each citizen is entitled to all the rights or privileges which any other citizen can enjoy or possess, and every citizen has the right to aspire to and hold any office, or pursue any lawful vocation, any other citizen may hold or pursue; except wherein the power to destroy this equality is expressly given or arises by clear implication from some other part of the fundamental law.—*Dorsey's Case*, 7 Port. 293; Cooley Const. Lim., 485.

The only other provision of the constitution which limits this right of the citizen to aspire to and hold public office is found in section 14, Art. VI of the constitution, providing that the judges of the Supreme Court, circuit courts and chancellors, and the judges of the city courts shall be "learned in the law." Except for this provision, any citizen, without reference to his learning, might aspire to hold either one of these offices; but with it, all not learned in the law are prohibited from holding them. Those excluded from the one, are included in the other class who may hold any office. The specification as to these judges, is an implied prohibition against legislative interference to add to the condition or to extend the penalty or disqualification to other cases.— Cooley Const. Lim., 78-79; *Thomas v. Owens*, 4 Md. 189;

*Barker v. People*, 3 Cowen 686 ; *Dorsey's Case, supra.* The counsel for the city does not deny, that this legislative restriction as to the holding the office of recorder, is in violation of the Declaration of Rights, as it plainly appears to us to be. But, it is contended by him, that the restrictive, offending words may be stricken from the particular section where they appear, without in anywise impairing the force and effect of the act. It often happens that an act of the legislature contains provisions opposed to the constitution, while others apart are unobjectionable. In such cases, the rule is, that those which conflict with that instrument are to be held as nullities ; and in such case, whether the other parts of the act not so offending, must also be adjudged void, must depend upon the object of the law, and to what extent or in what manner the rejected portion affects what remains. Discussing this subject, Judge Cooley says : ''Where, therefore, a part of the statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, yet be perfectly distinct and separate, so that the first may stand though the last fall. * * * If when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed according to legislative intent, wholly independent of that which was rejected, it must be sustained.''—Cooley Const. Lim. 209-11. Our own court, in many adjudications uphold this doctrine.—*M. & O. R. R. Co. v. The State*, 29 Ala. 573 ; *Lowndes County v. Hunter*, 49 Ala. 507 ; *Davis v. Minge*, 56 Ala. 121 ; *Bradley v. The State*, 99 Ala. 177 ; *Randolph v. B. & P. Supply Co.*, 106 Ala. 501, 513.

The special provision of the section 6 of the charter relating to this particular matter reads : '' That there shall be elected the first Monday in March, 1897, and on the first Monday in March, every three years thereafter,

in the manner herein provided, a mayor, a recorder, a city engineer, a city attorney and a city clerk, who shall hold their offices for three years and until their successors are elected and qualified, and in the event that any of said offices shall become vacant by the death, resignation, removal, or otherwise, the general council shall fill such vacancies for the unexpired term with the exception of mayor, which is hereinafter provided for. Said recorder shall be learned in the law and a practicing attorney at the time of his election," etc. It is obviously plain that the offending clause is distinct and separable from the other provisions of the section of the act in which it occurs, and that what remains, if this clause be stricken may stand as a perfect and intelligible provision. To hold that the legislature would not have passed the one without the other, would necessitate the presumption that the legislature, in providing for a government for Mobile, would not have created the office of recorder, without the provision in question, a presumption we may not indulge without doing violence to their best intentions in providing for the good government of the city. If they had been advised at the time and believed, that said provision was obnoxious to fundamental law, there scarcely remains room to doubt, that they would have stricken it, leaving the act as it will remain without that clause. The general, apparent purpose of the legislature will not be defeated by giving operation to that section, rejecting the provision held to be void.—*S. & N. Ala. R. R. Co. v. Morris*, 65 Ala. 193 ; Cooley Const. Lim., 177.

There was no error in giving the general charge, requested by plaintiff, that, under the agreed state of facts, the jury should find the defendant guilty, and in refusing a similar charge, requested by defendant, that they should find defendant not guilty.

Affirmed.