142 So. 46

### STATE v. H. M. HOBBIE GROCERY CO.

#### 3 Div. 11.

Supreme Court of Alabama.

May 12, 1932.

Rehearing Denied June 9, 1932.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

Rushton, Crenshaw & Rushton, of Montgomery, for appellee.

**BOULDIN, J.**

This is an action by the state to recover several amounts alleged to be due as license taxes on motortrucks operated by defendant.

The complaint, in each count, charges that from and after October 1, 1931, defendant owned and operated upon the public highways of the state a Ford motortruck (described by factory and tag numbers) "of four tons and less than five tons," and had not paid the license tax required by law for such truck, and claims the amount of license tax due for a truck of that class under section 17 of the General Revenue Law, Acts 1927, p. 157.

In some counts further claim is made for license tax on the trailer drawn by such truck. Acts 1927, p. 332, § 1.

The plea was the general issue.

The cause was tried upon an agreed statement of facts, from which it appears:

Each of the trucks is rated by the manufacturers and known in the trade and generally as "1½ ton" Ford trucks. The defendant had duly paid the license tax on each of these trucks according to the schedule for trucks of "one ton and less than two tons" (Acts of 1927, p. 157), and for trailers drawn by such trucks (Acts 1927, p. 332). The defendant had, however, at rare intervals, loaded upon such truck, or truck and trailer, and hauled for short distances, loads of approximately 4½ tons. The theory of the suit is that the owner is due the state a license tax based upon the maximum load actually hauled over the public highways.

Appellee's view is that the manufacturers' rated capacity, known to the trade and public generally, is the proper basis of the tag tax. This, it is admitted, has been the construction uniformly given by the state tax commission, and other administrative agencies of the state, in collecting the tax and issuing tags.

The Revenue Act of 1911 (Acts 1911, p. 169) first imposed a license tax on automobiles for private use based upon their "rating" as to "insurable horse power." This has been uniformly followed in later statutes fixing license or tag taxes on automobiles for private, not commercial, use. The act of 1911 fixed a flat license tax on automobiles "for hire."

By the act of 1915 the license tax or registration fee on motorcars used for "commer-

cial or business" purposes was based on rated horse power. Acts 1915, p. 491, § 7.

It appears from the agreed facts that from about the year 1915 manufacturers of trucks have classified them on a tonnage basis; that they are known in common usage as "1-ton truck," "1½ ton truck," etc., meaning the weight of the load which under normal conditions can be hauled most efficiently and economically.

Generally, a guaranty is given by manufacturers, conditioned upon the truck not being operated with a load of more than 50 per cent. in excess of such rated capacity.

At the next session of our Legislature (Acts 1919, p. 397), after the above classification became general among truck manufacturers, the General Revenue Act fixed the schedule of license taxes on motortrucks upon a tonnage basis, as "trucks of one ton and less than two tons," etc.

The same basis of classification, in the same words, was re-enacted by the Legislature of 1923. Acts 1923, p. 287, § 16.

The same basis was again re-enacted in 1927. Acts 1927, p. 157, § 17.

So, for twelve years, the uniform construction of this statute by the administrative department has been to fix the license tax on the vehicle itself, designated by its tonnage classification well known among users of trucks. Meantime, the Legislature has twice re-enacted the classification in precisely the same terms.

The administrative construction of this statute has not been casual, occasional, or incidental; but has been of daily state-wide application in the execution of the law by all the agencies charged with duty in that regard. The state's revenue from this registration, license, or tag tax is substantial, and the constant subject of legislative attention.

■ Under these conditions, the re-enactment of the statute without change may be treated as a legislative approval of the departmental construction of the statute, quite as persuasive as the re-enactment of a statute, which has been judicially construed. 25 R. C. L. § 274, p. 1043 et seq.; State Tax Comm. v. Safety Transfer & Storage Co., 230 Ky. 225, 18 S.W.(2d) 991.

The state insists the statute is a police measure, designed to protect the highway from injury by overloading, as well as to provide revenue. All highway construction and maintenance is referable, broadly speaking, to the police power, the promotion of the public convenience, safety, and welfare. Revenue is raised for such purpose.

■ The graduated tax based on tonnage capacity carries into effect the principle insisted upon. This is a practical workable basis. It would be difficult to administer a law that calls upon the licensee to stipulate the maximum load he proposes to haul, and, if found loading in excess of such amount under any conditions, call upon him for a new license tax. This seems to be the construction upon which this action is based.

A separate penal statute prescribes the maximum tonnage for motortrucks on public highways. Highway Code 1927, p. 35, subsection (h), Acts 1927, p. 378, § 80 (h).

The mileage a car is run upon the highway is a major element of wear on the road; but tag taxes on neither private cars nor trucks are based on a mileage basis.

Section 81 of the Highway Code of 1927 is relied upon by the state. This section declares:

"Section 81. *Penalty for Using License Tag of Improper Classification.* It shall be unlawful and constitute a misdemeanor for any person to drive or operate any vehicle upon the roads, or highways, of this State, unless the tag license attached to the vehicle is of the proper classification computed upon the basis of the load carried upon the vehicle as provided by law."

The primary, if not exclusive, purpose of this section is indicated by the catch line heading, namely, to penalize the using of a license tag of improper classification; for example, using a tag for a truck of "one ton and less than two tons" upon a truck of "three tons and less than four tons." It does not undertake to make a classification.

We need not pursue the subject further. Our conclusion is the state was not entitled to recover.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.