182 So. 452

## ALABAMA PUBLIC SERVICE COMMISSION v. JONES.

### 3 Div. 234.

Supreme Court of Alabama.

June 30, 1938.

Thos. B. Hill, Jr., and Wm. Inge Hill, both of Montgomery, for appellee.

A. A. Carmichael, Atty. Gen., and Thos. S. Lawson, Asst. Atty. Gen., for appellant.

372

FOSTER, Justice.

This is an appeal, first, to the circuit court, in equity, and from it to this Court, to test the order of the Alabama Public Service Commission, which interpreted the Act of October 28, 1932, Ex.Sess., page 178, having application to contract and common carriers by motor vehicles not subject to the Alabama Motor Carrier Act of 1931, p. 303.

The Act of 1931 embraces such common carriers by motor vehicles as operate between fixed termini or over regular routes and do not include contract carriers as distinguished from common carriers.

The particular question relates to the carrying capacity of a motor vehicle designed to transport property rather than passengers, with a semi-trailer by which its mileage tax is fixed under the Act of 1932 in relation to the operations of such vehicles as a contract carrier.

The taxpayer operated two trucks with semi-trailers subject to the mileage tax of the Act of 1932, supra. The semi-trailer, thus defined, is where its front end rests on the rear end of the truck, and has two wheels at its rear, so that the load is distributed in a way that forty-five per cent. is on the rear wheels of the truck and forty-five on those of the trailer, the balance on the front wheels of the truck. The motive power all comes from the truck and none from the trailer. The trucks each had a rated carrying capacity of one and one-half tons. This capacity is based upon the dimensions of certain essential parts of the machinery which control the power, and is governed by fixed standards with no relation to the size or hauling capacity of the chassis or body which is used. The trailers, separately considered, as operated by this taxpayer each has a manufacturer's rated capacity of five to six tons, irrespective of the capacity of the truck to which it may be attached. Trailers were not rated by the manufacturer when the Act of 1931 was passed.

The evidence shows that by the use of a semi-trailer with more of the load taken from the rear wheels of the truck and spread out over more space on the road, road hazards are lessened and operation more satisfactory with the same load but without the trailer, and no additional burden on the road is thereby created.

After the Act of 1932 became operative, and upon the authority of the case of State v. Hobbie Grocery Co., 225 Ala. 151, 142 So. 46, the Public Service Commission charged and collected on such trucks a mileage tax based on a rated carrying capacity at less than two tons, not considering the trailer. The case declared the rule to be that the rating of a truck should be based upon the motor power as above stated and not upon the amount of the load carried, (no question being raised as to trailers), and the Alabama Public Service Commission adopted that interpretation and acted upon it for several years, with no regard to the trailers. The Legislature of 1935 transferred to the State Tax Commission the duty to collect the tax, but made no change in the manner of its computation, here material. Acts 1935, page 529.

By this proceeding the State Tax Commission is seeking to change such method as an improper interpretation of the Act of 1932; not that the power of the motor is not controlling when there is no trailer, but that when there is a trailer the Act of 1932 should be interpreted according to the requirements of the Act of 1931, though they are not included in it directly or indirectly, whereby the capacity of the trailer is controlling rather than of the motor.

The General Revenue Act of 1927 (page 157), section 17, prescribed a license tax on trucks measured by capacity, not a mileage tax here under consideration. Another Act, August 25, 1927 (page 332) added fifty per cent. of such amount for the trailer.

The Motor Carrier Act of 1931, page 303, to which we have referred, was the first to provide in section 5 for a mileage tax, but applied only to common carriers between fixed termini or over regular routes. In section 1 of it, there is defined a motor vehicle as a self propelled vehicle or vehicles used in connection therewith not upon rails or tracks. And in section 5, it is provided that for the purpose of computing the mileage tax there set up, "each trailer attached to a motor propelled vehicle of any kind and used for transportation of property shall be deemed a motor propelled vehicle, and the mileage tax shall be computed upon the basis of the rated carrying capacity and miles actually operated by such trailer on the highways of this State at the rate herein specified for motor propelled vehicles in the transportation of property." There is also provision for a trailer where the truck is in the nature of a tractor and carries none of the load itself, except its own weight.

As we have said, the Act of 1932 is that which has special application to this case. In section 1 of it, a motor vehicle is made to "include any such vehicle [that is one which is motor propelled not on rails] operated as a unit in combination with another vehicle used for such purpose." And in section 22 the mileage tax here specifically set up and not theretofore existing in respect to the carriers there included, is computed on "a rated carrying capacity of" specified tonnage. No reference to a trailer is made in connection with said tax, as is done in the same connection in the Act of 1931 relating to common carriers between fixed termini or over a regular route.

In construing the Act of 1932, sections 1 and 22 must be read together. So that the vehicle in section 22, though it does not say "motor" vehicle, must have that meaning, since no other vehicle is there mentioned or defined. Taking the definition of a motor vehicle as set up in section 1 and transposing it to the section creating the mileage tax, it would read as follows: "A mileage tax of one-half cent per mile on all vehicles, (including those operated as a unit in combination with another vehicle used for such purpose) transporting property with a rated carrying capacity of less than two tons," etc., with the amount increasing on a scale with an increase in tonnage capacity. Without other aid, we would say that the

motor power should control, because regardless of the capacity of the body, or a trailer attached to hold a much heavier load, the controlling inquiry is the power to transport along the highway, not the capacity to load a stationary vehicle. The trailer may be built to last much longer than the truck, and be used on another after the first is worn out, and have the strength and endurance to hold much more than the capacity of the motor to pull economically, so that it will be durable and stand up under hard service without repairs or damage.

We can see no more reason for rating the capacity of the unit by the strength of the trailer than by the strength and size of the truck body when there is no trailer. But it is said that the same argument would apply to those common carriers provided for in the Act of 1931, in which it is provided in respect to the mileage tax that such trailer shall itself "be deemed a motor propelled vehicle," and that when the Legislature passed the Act of 1932, though they did not so declare, they so intended, because there was no reason for not doing so.

If we construe those acts together so as to get definition in the former for words used in the latter, on the theory that they were so used as previously defined, it would be so only if they were not also defined in the latter act. In it a truck with a trailer is, as one unit, a motor vehicle, with a tonnage controlled by its rated capacity, which we have said is engine power. The Legislature has the right to classify common carriers, so that more burdens will be placed on those having fixed termini or regular routes, than on others and more also than on contract carriers. It is not our province to inquire into the reasons for such classification, except to find out if it is purely fanciful. We do not know the problems of such business, and the advantages of one form over the others.

But the fact remains that until the Act of 1931 there was no mileage tax on trucks, and then it was placed only on one aspect of the business, and other common carriers and all contract carriers paid no mileage tax at all until the Act of 1932. Why was that so? Then the Act of 1932 in putting the mileage tax on the others was still more lenient than with the common carriers under the Act of 1931, we presume, for the reasons which

influenced the Legislature in leaving the others out of the Act of 1931. And the Public Service Commission so enforced the Act, and was doing so when the Legislature in 1935 amended the law as we have said, so as to transfer the collection of this tax to the State Tax Commission without amending it in respect to the question now under consideration. It was after that change that the increased amount was demanded. While that of itself may not be controlling here, there are occasions when it is so considered. See State v. Hobbie Grocery Co., supra.

It is also to be noted that the Act of 1932 was passed after the decision in the Hobbie Grocery Co. Case, supra, in which the terms used to describe the capacity of the truck were defined. It must be presumed that the Legislature was aware of this and intended them to be so understood. When the Act of 1932 was passed, if the Legislature had intended to put carriers under it on the same basis as those under the Act of 1931, it seems reasonable that in doing so they would have used language of substantially the same meaning or referred to it as controlling in that respect.

At that time trailer makers had begun to rate the capacity of their product. But there is no uniform standard among them in that respect, and it is difficult to see how a rule can be devised which would generally apply. As we understand, such capacity is dependent, not only on its size, but the strength of the material used. It would not be conducive to good practice, it seems to us, to be controlled by such rating as the manufacturer should fix, without a standard controlling the basis for computation. It may be that in recognition of that fact a change was made in the 1932 Act in that respect.

Much speculation might be indulged influenced by the history of the bills leading to the Act of 1931, as counsel argue. But whatever be the reason there is a difference between the two acts, and it is our province only so to declare, and not interpret into one something material but not stated.

But appellee contends in support of his cross-assignments that he should not be charged with the mileage tax on the return trip of a pay load when on such return the truck is empty. The mileage tax of section 22 of the Act of 1932 is levied (1) on "passenger vehicles" the amount determined by the seating capacity; and (2) on "vehicles transporting property" the amount determined by its rated carrying capacity, as we have described.

There was no contention that when the owner operated the truck to transport his own goods, or used it for his personal business the tax should be imposed, whether the truck was loaded or empty. But when it is used to transport property for others the trip going and returning according to the mileage was held taxable by the Public Service Commission and the circuit court, though it might have been empty one way on the trip. We agree with that construction. The Act defines the vehicles and classifies them (1) as those which are passenger vehicles and (2) those which transport property. The mileage tax on neither is dependent upon the question of whether passengers in the one or property in the other are throughout the trip transported, but whether the trip is for that purpose in whole or in part.

We agree with the judgment of the circuit court, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.