190 So. 92

**DIXIE COACHES, Inc., v. RAMSDEN, License Inspector.**

6 Div. 529.

Supreme Court of Alabama.

June 15, 1939.

Rehearing Denied June 30, 1939.

Curtis & Maddox, of Jasper, and Foster, Rice & Foster and Hyman Rosenfeld, all of Tuscaloosa, for appellant.

Thos. S. Lawson, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for appellee.

THOMAS, Justice.

The decision in this case affects the State's revenue and hence falls within the class of preferred cases.

The petition sought a declaratory judgment to determine whether the license schedule governing the licenses for motor-driven passenger busses is based upon a so-called (1) "manufacturer's rated carrying capacity" or (2) upon the actual seating capacity of motor-operated busses, as the said schedule is set out in the Revenue Laws of 1935, p. 520, as follows: "Schedule 158.3. (a) Each automobile, motor car or motor bus used for transporting passengers paying fare or charges, shall pay the following named amounts for license tax: *With seating capacity of five persons,* or less $37.50, *with seating capacity of more than five and not exceeding ten, $50.00. With seating capacity of more than ten and not exceeding fifteen, $75.00. With seating capacity of more than fifteen and not exceeding twenty, $100.00. With seating capacity of more than twenty and not exceeding forty, $150.00. With seating capacity exceeding forty, $200.00.*" [Italics supplied.]

As stated by the appellant in his statement of the case, the question presented to the trial court for determination was whether or not under said schedule 158.3 (a) the term "seating capacity" as therein mentioned, and for which a license on a graduated scale is levied, means (1) the *actual seating capacity of the bus* or whether or not the license is based upon a (2) so-called *"manufacturer's rated carrying capacity."*

The evidence on behalf of the appellant, Dixie Coaches, Inc., tended to show that Dixie Coaches, Inc., is a corporation organized under the laws of the State of Alabama engaged in the transportation of

passengers, their personal effects and small packages as common carriers in the State of Alabama under a certificate of public convenience and necessity issued to it by the Alabama Public Service Commission, along the route, among others, of Florence, Alabama, to Birmingham, Alabama, via Jasper, Alabama, and that in conducting its business as such common carrier motor vehicles are used for which a license is required under Schedule 158.3(a) of the Revenue Acts of 1935, General Acts 1935, p. 520, and that for the license year 1937-38 there were issued to it by the Probate Judge of Tuscaloosa County, Alabama, automobile bus licenses on its busses. The evidence tended to show that most busses come equipped with two types of seats all of which are securely bolted to the floor of the bus in such way as to make them permanently attached to the same. One type of seat has cushions in the back and on the seat proper. The other is a small type of seat bolted to the side of the larger seats and is known as a "drop seat," which may, when necessity demands, be pulled down so as to allow it to extend across the aisle of the bus in such manner that the back may be unfolded or raised up allowing it to be used for a passenger, and when not in use it may be folded up and pushed up against the seat to which it is bolted in such manner as to leave the aisle open and free for the purpose of passing back and forth.

The evidence further tended to show that the Dixie Coach Lines, Inc., operates coaches numbers 29 and 21 which have a seating capacity, inclusive of the "drop seats," or "jump seats," as they are referred to, for nineteen passengers. Busses numbered 33, 34, 35, 36 and 37 operated by the same company have an actual seating capacity of twenty-six seats when the so-called "drop seats" are included, or if counted by the so-called "manufacturer's rating" the seating capacity would be limited to twenty seats.

The petitioner purchased licenses from the Probate Judge of Tuscaloosa County based on the number of seats less the number of "drop seats." Of course, this number of seats was a basis presented to the Probate Judge by petitioner, and not a finding of fact by said official. For these coaches the licenses paid were on a lower schedule than would have been the case if the license had been paid upon the basis of actual seating capacity.

The evidence for the State tended to show that no administrative ruling or construction by those departments of the state government charged with the enforcement of this law had been placed upon the statute here involved, and that the license inspectors had been instructed to make citations on bus drivers and bus companies who were operating busses with a sufficient number of seats, including "jump seats," to show a seating capacity in excess of the seating capacity for which a license tag on said bus would be proper.

The evidence of the State further tended to show that "manufacturer's rated capacity" was a term unknown to the administrative agencies of the state charged with the enforcement of this law and that no such term as "rated capacity" applicable to passenger vehicles is known to the said agencies required to enforce the provisions of the law here in question; namely, the Revenue Acts of 1935, p. 520, Schedule 158.3(a), quoted supra.

The trial court decreed that under the statute having application, and as set out above, *seating capacity* as mentioned in the statute did not mean the "manufacturer's rated carrying capacity" of the vehicle, but the actual passenger seating or carrying capacity of said vehicle.

The industry of the respective counsel disclose several of the rules of statutory construction that are pertinent.

■ All "particular rules for construing statutes must be regarded as subservient to end of determining legislative intent." Middleton v. General Water Works & Electric Corp., 25 Ala.App. 455, 149 So. 351; certiorari denied, 227 Ala. 219, 149 So. 352.

■ The intention of the Legislature must primarily be determined from the language of the statute itself if it is unambiguous. Steber v. State, 26 Ala.App. 148, 155 So. 706; certiorari denied, 229 Ala. 88, 155 So. 708.

■ To justify a departure from the language of the statute, there must be a moral conviction that its practical effect under existing law, the spirit of the whole statute and its legislative history, as well as the purpose to be accomplished, duly disclose the Legislature could not have intended such result under a rational, sensible construction. Mobile Liners v. McConnell, 220 Ala. 562, 126 So. 626; Birmingham Paper Co. v. John C. Curry, etc.,

Ala.Sup., 190 So. 86;[1] City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Board of Revenue v. McDanal, 213 Ala. 349, 105 So. 191; Napier v. Foster, 80 Ala. 379; Cloverdale Homes v. Cloverdale, 182 Ala. 419, 62 So. 712, 47 L.R.A.,N.S., 607; Watson v. Clayton, 230 Ala. 59, 159 So. 481; Shepherd v. Clements, 224 Ala. 1, 141 So. 255; Id., 224 Ala. 3, 141 So. 256; Storrs v. Heck, Comptroller, Ala.Sup., 90 So. 78; and many authorities cited; Paterson v. Wisener, 218 Ala. 137, 117 So. 663; State ex rel. Austin v. Black, 224 Ala. 200, 139 So. 431; Swindle, County Treas., v. State ex rel. Pruitt, 225 Ala. 247, 143 So. 198; State ex rel. Ellis v. Griggs, 227 Ala. 681, 151 So. 850.

The general rule is that where the language of a statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction. Louisville & N. R. R. Co. v. Western Union Telegraph Co., 195 Ala. 124, 71 So. 118, Ann.Cas.1917B, 696; Board of Education of Jefferson County v. State, 222 Ala. 70, 74, 131 So. 239; May v. Head, 210 Ala. 112, 96 So. 869; White v. City of Decatur, 25 Ala.App. 274, 144 So. 872; certiorari denied, 225 Ala. 646, 144 So. 873, 86 A.L.R. 914.

In Holt v. Long et al., 234 Ala. 369, 174 So. 759, a rule of taxing statutes and exemptions thereto is thus stated: "Courts can only learn what Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing statute." Such was the rule recognized and applied in John C. Curry, as Com'r of Revenue et als. v. Feld et al., Ala.Sup., 190 So. 88;[2] National Linen Service Corp. v. State Tax Commission, 237 Ala. 360, 186 So. 478; Graybar Electric Co. v. Curry, ante, p. 116, 189 So. 186.

That is to say, that taxes are construed liberally in favor of the citizen, but not so as to arbitrarily limit and embarrass the State in the right of adjustment of its financial policies in the due conduct of government.

The rule that the construction of a statute by those charged with its execution, particularly high executive officials, is entitled to great consideration, and applies only in case of statutes of doubtful meaning or where such construction has for many years controlled the conduct of the public business. State v. Tuscaloosa Building & Loan Ass'n, 230 Ala. 476, 161 So. 530, 99 A.L.R. 1019; Stewart v. Wilson Printing Co., 210 Ala. 624, 99 So. 92; Board of Education of Jefferson County v. State, supra; Johnson v. Craft, 205 Ala. 386, 87 So. 375; State ex rel. Clarke v. Carter, 174 Ala. 266, 56 So. 974; Cooley's Const. Limitations, 8th Ed., p. 145.

It is further established and given general statement in the books that taxing statutes must be construed against the state in favor of the taxpayer. Ware Lodge No. 435, Ancient Free & Accepted Masons, v. Harper, 236 Ala. 334, 182 So. 59; State v. Roden Coal Co., 197 Ala. 407, 73 So. 5; Yarbrough Bros. Hardware Co. v. Phillips, 209 Ala. 341, 96 So. 414; Ashe Carson Co. v. State, 138 Ala. 108, 35 So. 38; Kennedy Stave & Cooperage Co. v. Sloss-Sheffield Steel & Iron Co., 137 Ala. 401, 34 So. 372; State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498; Jefferson County v. Smith, 23 Ala.App. 421, 125 So. 401; Hill Grocery Co. v. State, 26 Ala.App. 302, 159 So. 269; 1 Cooley on Taxation, 4th Ed., § 83 et seq.

These rules of construction led to just decisions to the effect that the duty to maintain the street or public highway by vehicles tending to the destruction of such way in a use not common to all the citizens gives the right to reasonably require of those who superimpose additional burdens for "special benefit" to pay "reasonably for the privilege." Browne v. City of Mobile, 122 Ala. 159, 25 So. 223, 225; State Tax Commission v. County Board of Education, 235 Ala. 388, 179 So. 197; Kentz v. Mobile, 120 Ala. 623, 24 So. 952; City of Mobile v. Le Clede Hotel Co., 221 Ala. 531, 129 So. 477; Hill v. Moody, Probate Judge, 207 Ala. 325, 93 So. 422; Note, 103 A.L.R. 45. So also come the decisions to the effect that the "manufacturer's rating" of carrying capacity of motor vehicles is a proper basis for tag tax. State v. H. M. Hobbie Grocery Co., 225 Ala. 151, 142 So. 46; Alabama Public Service Commission v. Jones, 236 Ala. 370, 182 So. 452.

The term of the statute is that of "seating capacity". The statute does not refer to, or make use of any term having

---

[1] Ante, p. 138.

[2] Ante, p. 255.

the semblance of the expression "rated carrying capacity". The term "rated carrying capacity" is applicable by the wording of statutes governing freight trucks, but has no application in a statute relating to "seating capacity," specifically used by busses for transporting passengers.

The language of the statute is unequivocal. The legislative intent is clear and to be determined from the language employed. A careful reading of the statute reveals that there are no terms used or references made in the statute to any terms to be applied other than in their ordinary and generally accepted sense. We hold that the words "seating capacity" made the basis of a graduated license tax included the "drop seats" with the other seats that provided seating capacity in the aisle of the bus, as this and the other seats are installed and used by appellant company in its passenger transportation by its busses. Such was the holding of the trial court.

It results that the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

