HIGGINBOTHAM v. ROAD IMPROVEMENT DISTRICT No. 3.

Opinion delivered June 5, 1922.

1. PLEADING—MERE CONCLUSION.—In a suit to restrain highway improvement commissioners from building a lateral highway, an allegation that plaintiff's land will receive no benefit is too general, and amounts to no more than a mere conclusion.

2. HIGHWAYS—INEQUITABLE ASSESSMENT—REMEDY.—Under special act of 1913, p. 864, as amended by unpublished special act of 1920, § 6, where the assessment of benefits for the construction of lateral roads is inequitable, the remedy of a property owner is by petition to the commissioners for a reassessment, and not by a proceeding to restrain the commissioners from constructing the road.

3. HIGHWAYS—AUTHORITY TO MAINTAIN AND REPAIR CONSTRUED.—Under special act of 1913, p. 864, as amended by unpublished special act of 1920, § 2, requiring the commissioners of a certain road improvement district to maintain and repair the roads constructed under their supervision, it was not beyond their authority to regrade and widen the roads, shape up ditches, put in culverts, and drain and re-surface the roads with seven inches of gravel.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Morris & Morris,* for appellant.

1. The right of the commissioners to maintain the roads in the district is not denied. 140 Ark. 381; 143 *Id.* 228. But, in this instance, it is not maintenance or repair work that is in contemplation, but reconstruction. That, we think, was not intended by the act. 7 Words and Phrases, 6100. It cannot be that the Legislature intended to empower the commissioners to expend for repairs a sum so nearly equal the initial cost of the improvement. See § 2 of the amendatory act.

2. Section 3 of the amendatory act is invalid and unconstitutional in requiring the commissioners to construct five miles of new road within their district, because the construction of this lateral road will not benefit the lands of the plaintiffs. 83 Ark. 54.

*Chas. A. Walls,* for appellee.

1. So far as pertains to the right to maintain and repair roads is concerned, 140 Ark. 381 and 143 Ark.

248, cited by appellant, and 144 Ark. 494, are controlling. The language employed by the Legislature in the act in question amounts to a legislative finding that the lands in the district are benefited to the extent of the repairs and maintenance. This finding should be conclusive. 83 Ark. 54; 112 Ark. 357; 140 Ark. 381; 144 Ark. 494; 147 Ark. 112; 83 Ark. 334; 47 Pa. St. 362; 142 Ky. 46. See 7 Words and Phrases, 6096-6101, and 4 *Id.* 2nd Series, 271-275 for definition of "repair" and "repairs". It is generally held that the words "maintain and repair" are synonymous terms and mean the same thing. 111 Iowa 310; Webster's Dict.; 155 Mo. 391.

2. That the act is invalid in authorizing the construction of the lateral road is not supported by the previous decisions of this court. Both by the original act, act 212 Acts 1913, §§ 15, 18, and by the amendatory act, act 133, Acts 1920, § 6, the property owner is amply protected, and is afforded ample remedy to correct any injustice or inequalities in assessments or reassessments.

McCULLOCH, C. J. Appellee is a road improvement district created by the county court of Lonoke County pursuant to the terms of a special statute applicable to that county (Acts 1913, p. 64), and the road specified in the organization of the district was improved at a cost of $105,000, exclusive of interest on bonds.

The General Assembly, at the extraordinary session held in February, 1920, enacted another statute amending the former statute referred to above by conferring authority upon the districts formed under the original statute to provide for the repair and maintenance of the roads constructed, and also to improve certain lateral roads running out from the main road which had been improved.

The section of the new statute containing the authority to provide for the repair and maintenance of the road reads as follows:

"Section 2. The board of commissioners of Road Improvement Districts Number One (1), Two (2), Three

(3), Four (4), Five (5), Six (6), Seven (7), Eight (8), all of which were created under the terms and provisions of act 212 of the Acts of 1913, and the board of commissioners of any district which may be hereafter created in Lonoke County, under the terms and provisions of said act, or under the terms and provisions of any general act applicable to the county, are hereby required to maintain and repair the roads constructed under their supervision, subject to the approval of the county court, and, in order that said roads may be properly maintained and repaired, it shall be the duty of the board of commissioners of said districts to cause a competent engineer to make an estimate of the cost thereof from time to time, which shall be reported to the county court. If the county court finds the cost of said maintenance and repair to be reasonable and to the best interest of the district, it shall authorize the board of commissioners of said district to borrow money for the purpose of maintaining and repairing said roads, and shall enter a levy upon the property previously assessed for a sum sufficient to maintain and repair said roads, which levy shall be added to and collected with the annual tax already levied for the original improvement. All lands and other real property in said districts are hereby declared to be benefited in proportion that the cost of said maintenance and repairs bears to the present assessment of benefits now in force in said districts; provided, that nothing in this act shall be construed as prohibiting a reassessment of benefits when ordered; provided further, that if any district shall have issued interest-bearing obligations, the total amount of the assessed benefits in any district shall never be reduced.''

The section of the new statute authorizing appellee to construct a lateral is as follows:

''Section 5. The board of commissioners of Road Improvement District No. 3 of Lonoke County, Arkansas, are hereby authorized and empowered to improve, by grading, draining and surfacing the following described

public road in said district, to-wit: Beginning at or near the northeast corner of the northeast quarter of the northeast quarter of section fifteen (15), township two (2) south, range nine (9) west, where a public road joins the macadam road already constructed in said district, and running thence in a southeasterly direction following said public road to about the southwest corner of the southeast quarter of section 23, township 2 south, range 9 west; thence continuing along said public road in a southerly direction to the northwest corner of the northeast quarter of section 35, township 2 south, range 9 west, thence east along the public road to the northeast corner of section 36, where Indian Bayou drainage ditch in Indian Bayou Drainage District Number 2 intersects said public road.

"That the commissioners of Road Improvement District Number 3 of Lonoke County, Arkansas, are hereby authorized and empowered to borrow such sums of money that may be required to construct the five miles of road above described, and when said money is so borrowed, the commissioners shall call upon the county court to levy a tax upon the present assessment of benefits in force in said district sufficient to pay the cost thereof, which levy shall be added to and collected with the annual tax already levied for the original improvement."

Section 6 of the new statute is as follows:

"If any owner of real property finds that, by reason of the construction of the road set out in sections three (3) and four (4) and five (5) of this act, that the assessment of benefits previously made has become inequitable by reason thereof, they shall file a petition with the commissioners of the district affected, asking that the benefits be reassessed, and the board of commissioners shall order a reassessment of the lands affected, or if the commissioners of said districts find that any assessment has become inequitable, they shall order assessors for said district to reassess the benefits upon the lands or other real property affected, which assessment shall be made, advertised and confirmed in accordance with the methods

set out for the original assessments, and, as assessed, shall be final and binding on the property owners, unless an appeal is taken therefrom within ten (10) days after the order is made by the county court confirming said assessment.''

Appellant is the owner of real property in the district, and instituted this action in the chancery court of Lonoke County to restrain the commissioners of the district from proceeding to improve the lateral road, and also from proceeding under the contract to repair the road.

There is an attack upon the validity of the statute with respect to the provision for improving the lateral road, and there is an attack upon the validity of the proceedings about to be attempted by the commissioners with respect to the repair and maintenance of the road. The court sustained the demurrer to the complaint, and we will discuss the several attacks in the order mentioned.

The lateral road to be improved runs off from the main road originally improved, several miles southeast of England, and it is alleged in the complaint, in general terms, that the lands of appellant, which are situated several miles northwest of England, will receive no benefit from the construction of the additional improvement, that is to say, the lateral, and that the statute is void in providing for the improvement of the lateral road to be paid for by taxation upon the benefits originally assessed for the road already improved.

The allegation in regard to there being no benefits to appellant's land is too general to amount to more than a mere conclusion. *Salmon* v. *Board of Directors of Long Prairie Levee Dist.*, 100 Ark. 366. The allegation does, however, present a question as to the validity of the statute in providing for the payment of the cost of construction of the lateral road by taxation based upon benefits accruing from the original construction of the main road.

This assessment of benefits was made at a time when the addition of the lateral road was not contemplated, and there might be a difference in the accrual of benefits from the added improvement. The enactment of the statute necessarily implies a determination by the lawmakers that benefits to the lands in the district from the improvement of the lateral road will accrue to all lands in the district in the same proportion as the benefits from the original improvement of the main road accrued. It is not shown by proper allegations in the complaint that this determination of the lawmakers is obviously wrong. Mere distance from the lateral road to be improved does not necessarily determine the question of benefits. In addition to that, the rights of property owners are amply protected by the provisions for a reassessment of benefits in the whole district by reason of the construction of the lateral. Under the section of the statute providing for a reassessment there is a complete remedy to the property owners by a reassessment—not a mere readjustment or equalization of assessments, but a new assessment to meet the conditions arising by reason of the construction of the new part of the improvement. Under this section there is authority for this, either upon application of the property owners or on the initiative of the commissioners themselves. It is not merely a provision for the correction of individual assessments, but calls for a complete reassessment, upon proper application.

We are of the opinion, therefore, that the statute was valid in regard to the improvement of the lateral road, and that if appellant has any grievance in regard to the assessment of benefits, the remedy provided by the statute itself is adequate.

It is alleged in the complaint that the commissioners of the district have prepared plans and specifications for "regrading, widening, shaping-up the ditches, and putting in culverts, proper drainage, and re-surfacing the road with seven inches of gravel, or about fifteen hundred

tons per mile, which, in fact, is reconstruction work"; that the proposed cost of such improvement is to be $85,-250, and that, unless restrained, they will let a contract for the improvement of the road to that extent. But the contention is that this contract sought to be made by the commissioners is beyond the scope of the authority contained in the statute to "maintain and repair" the roads.

The question presented by this allegation in the complaint, which, for the purpose of testing the correctness of the court's ruling, must be taken as true, is whether or not the commissioners are about to exceed their authority, which is limited to maintenance and repair of the road.

To repair means, according to the lexicographers, "to mend, add to, or make over; to restore to a sound or good state." Standard Dictionary. "To restore to a sound or good state after decay, injury, dilapidation or partial destruction; to restore or reinstate as in former standing." Webster.

A fair interpretation of the meaning of the word, as used by the lawmakers in this statute, is that it means restoration to the original state of the road after the former improvement was completed. Not exact, but substantial restoration was intended. It was not intended that an entirely new improvement should be constructed in disregard of the original plans, but only restoration of the improvement according to the original plans, with mere incidental changes allowable.

The same principle is applicable as that announced by this court in the cases of *Rayder* v. *Warrick,* 133 Ark. 491; *Hout* v. *Harvey,* 135 Ark. 102, and *Carson* v. *Road Imp. Dist.,* 150 Ark. 379, in dealing with the power of commissioners of improvement districts to make changes in the plans of improvements.

Applying this principle to the allegations of the complaint in the present case, we do not think that the language employed amounts to a charge of substantial departure from the original plans of the improvement.

The regrading of the road may be essential for the purpose of restoration; the widening of the road does not necessarily imply a substantial change, nor does the increase in the depth of the surfacing necessarily constitute a substantial charge, when considered in the light of the total cost of the improvement. This all may be done, and yet the improvement be confined substantially to repair or restoration work, using that part of the old improvement which still remains. We see nothing in this charge which could be held to constitute a departure from the language of the statute. The chancery court was therefore correct in sustaining the demurrer to the complaint.

Affirmed.

HART, J., dissents.