COWAN *v.* THOMPSON.

Opinion delivered October 15, 1928.

McHANEY, J. Counsel for appellees has correctly stated the case and the issues as follows: "The Luxora & Little River Road Improvement District No. 2 was created by orders of the county court under the Alexander Road Law, many years ago, and the limit of its right to issue bonds to the extent of 30 per cent. of the assessed value, as provided by the Alexander Road Law, was raised to 50 per cent. of the assessed value by special act No. 253, passed by the General Assembly in 1920. Bonds were issued amounting to approximately 50 per cent. of the assessed value of real property in the district, and the proceeds thereof applied toward the construction of about forty miles of highway within said district, some of which were only graded dirt roads, while others were covered with a layer of silica or gravel. The dirt roads, on account of the peculiar condition of the soil, have deteriorated to the point where they are impassable in wet weather. The silica roads, which are constantly traveled, have deteriorated to the point where they are rough and full of chuck-holes. The original district had no authority to issue additional bonds. To remedy this unfortunate condition of the property owners, R. E. Lee Wilson and many others in the district petitioned the county court to create a maintenance and repair district under C. & M. Digest, §§ 5463 to 5488. The petition of the property owners was granted, and

the district was created and organized. On account of the peculiar condition of the soil, the commissioners concluded that it would be a waste of money to attempt to repair the dirt roads by merely smoothing over the surface. Likewise they were of the opinion that it would be necessary, in order to put the silica roads in a good state of repair, to place thereon a thin coat of warrenite. Cowan, a property owner in the district, filed a bill attacking the plans of the commissioners, on the following grounds:

"(1) That the law passed in 1919 providing for the organization of maintenance and repair districts was repealed by the Martineau Act. (2) That a district organized under the maintenance and repair act has no right to issue bonds for any purpose. (3) That the maintenance and repair act applied to proceedings commenced in the year 1919 only. (4) That a maintenance and repair district was bound by the plans of the original district, and could use no material for repairing and maintaining roads other than the material specified and provided for in the plans of the original district."

The lower court sustained the latter contention. In other words, the lower court held that a dirt road could be repaired only with dirt, although the plaintiff concedes that the application of a thin layer of silica would be better and more economical in the long run, and that a silica road could be repaired only with silica, although the complaint concedes that the application of a thin layer of warrenite to the silica road would be better and more economical in the long run.

Both sides appealed.

1. Appellant first says that the act of February 11, 1919, §§ 5463-5488, C. & M. Digest, the first section of which is as follows: "Improvement districts may be formed for the purpose of keeping in repair roads and bridges now or hereafter improved by road improvement districts, created either by special act or under general laws," was repealed by act 11 of 1927.

The complaint alleges, with reference to the roads proposed to be repaired, that "none of said roads have been taken over for construction, repair or maintenance by the State Highway Department." The Martineau Act, act No. 11 of 1927, has to do only with State highways. *Taylor* v. *Rogers,* 176 Ark. 156, 2 S. W. (2nd) 56. In that case we said: "There is no prohibition in the several acts against the building of county roads, or roads not a part of the State highway system, under the Alexander Road Law, and we do not understand that the Alexander Road Law has been repealed by the provisions of the Acts of 1927." Not only was the act under consideration not repealed by the Martineau Act of 1927, but we think it will serve a useful purpose in the repair and maintenance of roads and bridges not forming a part of the State highway system, and which were originally constructed by road improvement districts. The chancellor correctly held there was no repeal.

2. Appellant next says that, because the form of notice prescribed by § 5469, C. & M. Digest, reads "on the ............... day of ................................ 1919," the act was only in force during that year. Section 5463 above quoted clearly refutes that idea and conclusively shows that it was a mere clerical error or misprision of the scrivener in writing 1919 instead of 19......... Again the chancellor correctly so held.

3. Neither is there any merit in appellant's claim that, although the district may "issue negotiable evidences of indebtedness," as provided by § 5468, C. & M. Digest, it cannot issue bonds maturing over a period of years. This court has recently decided to the contrary, and the chancellor correctly so held. *Ark. State Highway Com.* v. *Kerby,* 175 Ark. 652, 300 S. W. 377.

4. The appellees contend that the court erred in holding, as it did, in effect, that the dirt roads could only be repaired with dirt and the silica roads only with silica, the language of the decree in this regard being: "They are perpetually enjoined from graveling the graded dirt roads and from putting a warrenite surface

on silica roads, and no bonds can be issued for that purpose." We think the court erred in this regard, and placed too narrow a construction on the act. A careful reading of §§ 5468 and 5469, C. & M. Digest, appears to us to be conclusive of this fact. We will not set them out, as they are too long, but the former defines the powers of the commissioners, and makes it their duty to keep in repair the roads constructed by the original district, and to do this they are given broad powers. "Before doing any work of improvement on any of said roads," they are required to get the "approval of the county court of the work they propose to do." By the latter section the commissioners are required "to determine what repairs will be necessary to the roads * * * to put them in a good state of repair, and shall make plans for the making of such repairs, subject to the approval of the county court," etc. If the commissioners could only make such repairs as were covered or contained in the plans and specifications of the original district; if they could only repair a dirt road with dirt, a gravel road with gravel, or a silica road with silica, why does the act require them "to determine what repairs will be necessary," and why require them "to make plans for the making of such repairs"? It would seem a useless procedure, if they can make repairs only out of material of which the road or bridge was originally built.

A case very much like this is *Higginbotham v. Road Imp. Dist. No. 3,* 154 Ark. 112, 241 S. W. 866. This court there construed § 2, act 133, special session 1920, relating to road improvement districts in Lonoke County, wherein the commissioners were "required to maintain and repair the roads constructed under their supervision, subject to the approval of the county court, and, in order that said roads may be properly maintained and repaired, it shall be the duty of the board of commissioners of said districts to cause a competent engineer to make an estimate of the cost thereof from time to time, which shall be reported to the county court.

If the county court finds the cost of said maintenance and repair to be reasonable and to the best interest of the district, it shall authorize the board of commissioners'' to do the work, levy a tax on the assessed benefits, etc. Suit was brought to enjoin the making of repairs under this statute, and the complaint charged that the commissioners had prepared plans and specifications for ''regrading, widening, shaping up the ditches, and putting in culverts, proper drainage, and resurfacing the road with seven inches of gravel, or about fifteen hundred tons per mile, which, in fact, is reconstruction work;'' that the total cost of the work was $85,250; and that, unless restrained, they would let a contract therefor. It was contended that the above statute, to ''maintain and repair'' the roads, was not authority for the work proposed to be done. A demurrer to the complaint was sustained by the lower court, and on appeal this court affirmed this action. It was there said: ''To repair means, according to the lexicographers, 'to mend, add to, or make over; to restore to a sound or good state.' Standard Dictionary. 'To restore to a sound or good state after decay, injury, dilapidation or partial destruction; to restore or reinstate as in former standing.' Webster.

''A fair interpretation of the meaning of the word, as used by the lawmakers in this statute, is that it means restoration to the original state of the road after the former improvement was completed. Not exact, but substantial, restoration was intened. It was not intended that entirely new improvement should be constructed in disregard of the original plans, but only restoration of the improvement according to the original plans, with mere incidental changes allowable.''

As will be noticed, the commissioners in that case were to repair the roads by resurfacing them with seven inches of gravel, in addition to regrading, widening, shaping up the ditches, putting in new culverts, and constructing proper drainage. The opinion does not show what the roads were originally surfaced with, but

the proposed work was alleged to cost $85,250, and apparently were to be rebuilt under the guise of repairing them, which the court sustained. Here, however, the commissioners propose to resurface the dirt roads with gravel and put a thin layer of warrenite on the silica roads. We do not think this can be said to be an entirely new improvement, in disregard of the original plans, "but only restoration of the original improvement," with slight changes in the surfacing of the roads, using to great advantage the work done under the original plans, such as the right-of-way, the dump, bridges, culverts, ditches, silica, and the only change contemplated from the original plans is in the surfacing. If resurfacing the roads with seven inches of gravel and doing the other work alleged in the Higginbotham case constitute repairs within the meaning of the statute there cited, we fail to see why the work proposed to be done in this case should not be permitted under the statute now under consideration.

In *Hout* v. *Harvey,* 135 Ark. 102, 204 S. W. 600, one of the cases cited in *Higginbotham* v. *Road Imp. Dist. No. 3, supra,* as illustrative of the principle there announced and herein quoted, it was held, to quote the syllabus: "Under act No. 338, Acts 1916, the commissioners of a road district may change the plans of the road by slightly changing the width of the road, and increasing the thickness of the gravel instead of using a layer of asphalt, as originally planned; when the length of the route of the road is not changed, and the increase in the cost is not large." See also to the same effect *Carson* v. *Road Imp. Dist. No. 2,* 150 Ark. 379, 234 S. W. 257.

Since all the roads comprising the State highway system have been taken over for construction, maintenance and repair by the State Highway Commission, under the Martineau Act, the roads constructed by improvement districts, not a part of the State highway system, would in time become impassable, and the investment therein be wholly lost, unless such districts be

permitted to repair and maintain them. Foreseeing such disastrous consequences, the Legislature enacted the statute now under consideration providing a remedy against such a result. And we think such a construction should be given the act as will accomplish the purpose of the Legislature. To repair the roads in question means to make them over, not necessarily exactly like they were before, nor in exact accord with the original plans, but, utilizing the work done in constructing the roads originally under the original plans, make them over with such material for resurfacing as experience and advance in the science of road building teach will be the best and the most economical in the long run, thereby giving the landowners value received for their investment.

The primary object in the construction of statutes is to determine what purpose or intent the Legislature had in mind in passing the statute, from the language used, and to give effect to that purpose or intent. *Howell* v. *Lamberson,* 149 Ark. 183, 231 S. W. 872.

It necessarily follows, from what we have said, that the court erred in enjoining the commissioners from making the proposed repairs and the issuing of bonds to provide funds for this purpose. The judgment will be affirmed on the direct appeal, and will be reversed, and remanded with directions to sustain the demurrer to complaint on the appeal of the district.

KIRBY and MEHAFFY, JJ., dissent.