94 So.2d 872

**GLENCOE PAVING COMPANY, Inc.**

v.

**John GRAVES, State Comptroller, et al.**

3 Div. 785.

Supreme Court of Alabama.

Feb. 21, 1957.

Rehearing Denied April 25, 1957.

John Patterson, Atty. Gen., and J. Noel Baker, Asst. Atty. Gen., for appellee State.

Files Crenshaw and Hill, Hill, Whiting & Harris, Montgomery, for appellant.

Lange, Simpson, Robinson & Somerville and Wm. H. Cole, Birmingham, amici curiae, in support of appeal.

SIMPSON, Justice.

Glencoe Paving Company, Inc., suffered a judgment of nonsuit because of adverse rulings of the trial court and brings this appeal.

Glencoe filed a petition in the Circuit Court of Montgomery County for a writ of mandamus to require John Graves, as Comptroller of the State of Alabama, to pre-audit and pay or appear and show cause why he should not pay a voucher for the sum of $12,989.41 alleged to be due the appellant from the State of Alabama. The appellant claims said sum, as payment for 1,642.15 tons of asphalt plant mix furnished the State at $6.91 per ton and as payment for spreading the same amount of plant mix on the highways of the State of Alabama at $1 per ton, pursuant to purchase orders from the State.

The Comptroller filed an answer to the petition admitting the correctness of the appellant's claim. For further answer the Comptroller stated that he had been advised by the Attorney General of the State of Alabama not to pay said voucher because the contract, under which the appellant asked payment, allegedly was entered into in violation of the competitive bid law of the State.

The Attorney General intervened in the cause claiming that the stated contract was entered into in violation of Title 50, Code of Alabama 1940, as amended, by Act No. 492, Gen Acts of Alabama, 1947, which requires competitive bidding for "public improvements."

The Comptroller filed an answer to the Attorney General's complaint of intervention averring, inter alia, that the contract under consideration did not violate Title 50, as amended, because the contract was for the purchase of materials and not for a "public improvement."

The appellant demurred to the answer of the Comptroller to his petition, demurred to the Attorney General's complaint on intervention, and demurred to the answer of the Comptroller to the complaint on intervention. The trial court overruled all of the demurrers and stated in its ruling:

"The Court is clear to the conclusion that the material furnished and work done, described in the pleadings in this proceeding, are public improvements, not mere sales of personal property and come under the influence of Title 50 of the Code and are contracts which require the advertising of sealed bids, award to the lowest bidder and other safe-guards required by our laws relating to public works and designed for the protection of the public."

The question posed by this appeal is whether asphalt plant mix, spread on the highways of the State by the vendor as a re-surface of said highways, must be purchased by competitive bidding dictated by the provisions of Title 50 of the Code, as amended, or may the State purchase the labor and materials through the Department of Finance, Division of Purchases and Stores under the provisions of Chapter 4 of Title 55, Alabama Code of 1940.

The Attorney General advances two theories to support his contention that the instant contract should have been awarded by competitive bids. His first argument is that the re-surfacing of an asphalt highway does not constitute a mere repair or maintenance of such highway, but is instead a "public improvement" under our case law. The argument is also advanced that every repair is a "public improve-

ment" under our statutory law and that every contract for repair must, therefore, be made in compliance with Title 50, as amended. We will consider the latter theory first.

Title 50, Code of 1940, both before and after the 1947 amendment, requires contracts for "public improvements" to be awarded by competitive bid. The point of difference is what constitutes a "public improvement."

There is no doubt that repairs to highways were "public improvements" for the purpose of the competitive bid law prior to the passage of Act number 492, General Acts of Alabama, Regular Session, 1947. Act number 492 repealed §§ 1 to 15 of Title 50 and substituted new sections now codified as §§ 15(1) to 15(13) of Title 50, therefor.

Section 14 of Title 50 as it existed prior to the passage of Act number 492, supra, provided:

"Definitions.—* * * The term 'public improvement' shall include public buildings, structures, sewers, waterworks, roads, bridges, underpasses and viaducts, as well as any other improvement *to be repaired or constructed or maintained* by the awarding authority." (Emphasis supplied.)

Hence under the above provision, repairs to roads were "public improvements" for the purpose of the competitive bid law prior to the passage of Act number 492, supra.

Section 15(13) of Title 50, which was substituted by Act number 492, supra, for Section 14 of Title 50 is:

"Definitions.—* * * The term 'public improvement' shall include public buildings, structures, sewers, waterworks, *roads*, bridges, underpasses and viaducts, docks, as well as any other improvement *to be constructed* by the awarding authority.

The term 'public improvement' shall not include repairs, alterations, and renovations by institutions controlled by boards of trustees of similar boards." (Emphasis supplied.)

We note that that part of the definition of a "public improvement," which read "roads * * * to be repaired * * * or maintained," was left out of § 15(13), supra, the prevailing law on the subject.

To summarize then, prior to the amendment, § 14 of Title 50 defined a "public improvement," for the purpose of this case, as being "roads * * * to be repaired or constructed or maintained;" and the amendment, which is presently found in § 15(13) of Title 50, defines a "public improvement," for the purpose of this case, as being "roads * * * to be constructed," with no mention of repairs to roads.

But the Attorney General cogently argues that repairs to roads are still "public improvements" under § 15(13), Title 50, supra. To support this conclusion he seeks to apply the rule of statutory construction, *"expressio unius est exclusio alterius,"* (the expression of one thing is the exclusion of another). Under this maxim, if a statute specifies one exception to a general rule, there are no other exceptions to the rule, and the Attorney General argues that since Title 50, § 15(13) excludes "repairs, alterations, and renovations by institutions controlled by boards of trustees of [sic] similar boards," "public improvements" include repairs to roads, such repairs not being expressly excluded from the operation of the statute.

■ The legal maxim, *expressio unius est exclusio alterius,* expresses a rule of construction and not one of substantive law; and, its only service is as an aid in discovering the legislative intent when such intent is not otherwise manifest. United States v. Barnes, 222 U.S. 513, 32 S.Ct. 117, 56 L.Ed. 291; Jordan v. City of Mobile, 260 Ala. 393, 71 So.2d 513; Austin v. State, 36 Ala.App. 690, 63 So.2d 283.

■ In fact, all rules for construing statutes must be regarded as subservient to the end of determining the legislative intent; and such intent must be determined from the language of the statute itself if it is unambiguous. State v. Thames, Jackson, Harris Co., 259 Ala. 471, 66 So.2d 733; Dixie Coaches v. Ramsden, 238 Ala. 285, 190 So. 92.

■ We have said, when construing a competitive bid law of a county, that the repeal of a provision requiring competitive bids by the deletion of such provisions from a later act or amendment operates as an express repeal of the earlier provisions; and, that statutes requiring competitive bids should be strictly construed. Mitchell v. Walden Motor Co., 235 Ala. 34, 177 So. 151.

■ It is the view of this court, after much study and deliberation, therefore, that by expressly repealing the Code section which included repairs to roads in the definition of a "public improvement" and substituting therefor a definition of "public improvement" leaving out repairs to roads, the legislature clearly expressed its intention of excluding repairs to roads from the operation of the competitive bid law.

■ We are further reinforced in our conclusion by the legislative history of Act Number 492, supra, and of course for the purpose of ascertaining the legislative intent, we may look to the legislative history when interpreting a statute. Haralson v. State, 260 Ala. 473, 71 So.2d 79, 43 A.L.R. 2d 1343; City of Birmingham v. Hendrix, 257 Ala. 300, 58 So.2d 626; Blair v. Greene, 246 Ala. 28, 18 So.2d 688. Looking to the legislative history of Act number 492, we find that the definition of a "public improvement" in the act as originally passed by the House of Representatives was substantially the same as the definition of a "public improvement" then appearing in the Code; i.e., it included roads to be constructed or maintained. House Journal, Alabama 1947, p. 1763. The Senate rejected the bill as passed by the House and then passed a substitute bill which defined a "public improvement" as here pertinent, as roads to be constructed. Senate Journal, Alabama 1947, p. 1838. This substituted bill passed the Senate with 28 yeas and no nays. Senate Journal, supra, p. 1839. The Act was then sent back to the House where it passed, without any further changes, by 57 yeas and no nays. House Journal, supra. p. 2313.

It seems clear to us from the above legislative history of said Act number 492, that the legislature intended to exclude repairs and maintenance of roads from the definition of a "public improvement."

■ Several affidavits, which are a part of the pleadings in the case, indicate that the established administrative interpretation by the State Highway and Finance Departments of Act number 492, ever since its passage in 1947, has been that asphalt plant mix is a material which may be purchased by purchase order; and that it is not a "public improvement" which would invoke the requirements of Title 50, Code of 1940, as amended. The construction placed on a statute by the officers authorized to construe and administer the law is entitled to favorable consideration where such statute is ambiguous or of doubtful meaning, and where such construction has for many years controlled the conduct of public business. Miller v. State, 249 Ala. 14, 29 So.2d 411, 172 A.L.R. 1356; Dixie Coaches v. Ramsden, supra.

■ And there is a strong presumption as to its correctness where such a construction has been followed for a long time. Ex parte Darnell, 262 Ala. 71, 76 So.2d 770.

■ We reiterate our opinion, therefore, that the statute of Alabama, as it exists today, does not require competitive bids for the purchase and spreading of asphalt plant mix in the re-surfacing of already existing highways.

We have carefully analyzed the cases relied on by the Attorney General to sustain

his position, but in our view they are not supportive. It is significant to note that each case on this point of law was decided under the provisions of a particular statute of the jurisdiction involved.

In oral argument before the Court, the Attorney General alluded to a Wisconsin case which holds that a paving contract to re-surface certain streets, which did not comply with their competitive bid law, was void and no recovery could be had on the contract. Bechthold v. City of Wauwatosa, 228 Wis. 544, 277 N.W. 657, 280 N.W. 320, 321. But the applicable portion of the statute provided:

> "All public work, the estimated cost of which shall exceed five hundred dollars, shall be let by contract to the lowest responsible bidder; all other public work shall be let as the council may direct." St.1937, § 62.15(1).

The natural effect of the holding there was, of course, that the re-surfacing of a street with asphalt is a "public work" under their statute and that a contract for such re-surfacing must be let by competitive bid. We are constrained to believe that the Supreme Court of Wisconsin would not have arrived at the same result had their statute been similar to the one of instant concern.

A further canvass of the Wisconsin law discloses that the court intimated in the Bechthold case, supra, that the contractor should bring an action for unjust enrichment saying, "In that form of action such rights and equities as the contractor has can be worked out and determined." And a later Wisconsin case holds that the purchase of road oil and asphalt for use in repairing city streets did not constitute "public work" within the above Wisconsin statute requiring the city to let by contract to lowest responsible bidder all "public work", the estimated cost of which shall exceed $500. Standard Oil Co. v. City of Clintonville, 240 Wis. 411, 3 N.W.2d 701.

Another case, cited in brief and strongly relied on by the Attorney General for the proposition contended for is State ex rel. Stateler v. Reis, 38 Minn. 371, 38 N.W. 97, which held that street sprinkling is a local improvement within the meaning of § 1, Article 9, of the Constitution, M.S.A., for which an assessment may be levied upon the property fronting on the street. We do not regard this case as apposite. The court seems to have rested its conclusion on the theory that:

> "The only essential elements of a 'local improvement' are those which the term itself implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city." 38 N.W. 98.

Several cases cited by the State define an "improvement" as it relates to real estate, but do not shed any light upon what constitutes a "public improvement" for the purpose of the highways. The remaining cases cited by the Attorney General, in support of the proposition of law under discussion, relate to statutory construction, void contracts, severability of contracts, or non-recovery on the quantum meruit theory.

The appellant, Glencoe Paving Company, contends that the re-surfacing of a highway with asphalt is a repair or maintenance as opposed to a "public improvement" for the purpose of the competitive bid law. A Nebraska case very similar factually to the instant case is Cheney v. County Board of Sup'rs of Buffalo County, 123 Neb. 624, 243 N.W. 881, 882. In that case the Supreme Court of Nebraska held that the re-surfacing of a gravel highway with another layer of gravel constituted a repair rather than a "public improvement." The pertinent statute there provided:

> "All contracts for * * * improvements on roads * * * the cost and expense of which shall exceed five hundred dollars, shall be let by the county board to the lowest and best bidder." Comp.St.Supp.1931, § 39–801.

160

The court held that ordinary gravel re-surfacing was a repair and that a repair was not a public improvement within the meaning of the competitive bid law of that state. The Court thus rationalized:

"But the expenditures challenged and the services in dispute in the instant case were made and performed exclusively in 'resurfacing' highways. 'Resurface,' as defined by the Century Dictionary, is, 'to put a new surface on; renew the surface of.' To re-surface, therefore, does not imply a new or additional construction, but the reverse. Ordinarily resurfacing occurs in highways when the original gravel surface, by reason of travel and the elements, has been in part worn, wasted, or destroyed by removal from, or being imbedded in, the highway. The original basic construction which constituted the highway 'resurfaced' at all times remains; indeed, its continued existence is implied in the very use of the term 'resurface.' Nothing in the record before us tends to cast doubt on this conclusion. 'Resurfacing' a gravel highway, in the absence of controverting evidence, is, in its essential nature, a repair, a term we have judicially defined, in relation to bridges in the road law, as 'to restore to a sound or good state after decay, injury, dilapidation, or partial destruction.'"

Two other cases analogously supportive of the appellant's position hold that the re-surfacing of a street with new asphalt constitutes a repair and not an "improvement" which could be assessed against the abutting property owners. City of New Haven v. Whitney, 36 Conn. 373; City of Covington v. Bullock, 126 Ky. 236, 103 S.W. 276.

The Supreme Court of Arkansas, also for the purpose of a tax assessment, held that re-surfacing a highway with seven inches of gravel, in addition to regrading and widening the highway was only repair and maintenance work. Higginbotham v. Road Improvement Dist. No. 3 of Lonoke County, 154 Ark. 112, 241 S.W. 866. And a later Arkansas case, Cowan v. Thompson, 178 Ark. 44, 9 S.W.2d 790, held that to re-surface dirt roads with gravel and to put a thin layer of Warrenite on existing silica roads constituted repairs. These cases do not involve a competitive law, and, for that reason are useful to us only to show how courts define and distinguish "repairs" and "improvements" as these terms are applied to streets and highways.

The Supreme Court of Arkansas in the Higginbotham case, thus reasoned:

"To repair means, according to the lexicographers, 'to mend, add to, or make over; to restore to a sound or good state.' Standard Dictionary. 'To restore to a sound or good state after decay, injury, dilapidation or partial destruction; to restore or reinstate as in former standing.' Webster." [154 Ark. 112, 241 S.W. 868.]

And it was stated in the Whitney case that the "repair of a highway (and macadamizing is but a mode of repair) is not in any sense a public work or improvement."

In 40 C.J.S. Highways § 208 c(3), p. 95, the following is stated:

"Whether or not the requirement of competitive bidding applies to a particular contract depends largely on the language of the statute as properly construed. Thus a statute requiring competitive bids for contracts to 'improve' highways does not apply to contracts for work in the nature of 'repair.'"

We hold, therefore, that a contract to re-surface an existing highway is a "repair" and not an improvement within the meaning of said Section 492.

■ Laws requiring contracts to be let by public authorities to the lowest responsible bidder are designed to protect the public against collusive contracts and to prevent favoritism toward contractors

by public officials. Such contracts tend to secure fair competition upon equal terms to all bidders, and to close all avenues to favoritism and fraud—although no fraud is alleged or shown here—in its various forms. And it may be that our statutes should require competitive bidding on contracts for repairs and maintenance of our highways, but that cannot be a matter for our concern, but one for the legislature, if so desired.

These final observations seem appropriate.

While we hold that contracts for repairs or maintenance on highways are not required to be let on competitive bids because 1947 Act. No. 492 omits the words "repairs" and "maintenance" from the definition of public improvements, this decision is on pleadings without evidence. Appellant's ultimate right to relief will depend on the facts as finally determined by the pleadings and proof.

We, of course, review the case as the parties have presented it, and even though the pleadings could not be commended as models of perspicuity, we have treated them as argued. It would seem that the answer of the Comptroller to the petition for mandamus was favorable to the appellant; so also his answer to the Attorney General's petition for intervention. Hence the action of the trial court in overruling the appellant's demurrers thereto will not be reviewed. The intervention petition of the Attorney General, however, controverts the petition, but as hereinabove pointed out does not constitute a sufficient answer to it. The demurrer of the appellant, therefore, to the petition of intervention, should have been sustained. The learned trial court held to the contrary resulting that the judgment must be reversed, the order of nonsuit set aside, and the cause restored to the docket for further proceedings not inconsistent herewith.

Reversed and remanded with directions.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.