Pursuant to Rule 18 of the ARAP, the United States District Court for the Middle District of Alabama, Southern Division, has requested this Court to answer certain questions of law which that Court deemed determinative of an action before it and on which there is no clear controlling precedent in the decisions of this Court.
The Federal District Court, in support of the certificate, submitted the following facts:
 "(1) Ronald Paul Adams, } et al., Plaintiffs, }
 United States of America, } Plaintiff-Intervenor } Civil Action } No. 74-70-S v. }
 Nathan Mathis, et al., } Defendants }
 "(2) This suit is brought by plaintiffs who represent a class consisting of all inmates who were confined since November 18, 1974, or who are presently confined, or will be confined in the future in the Houston County, Alabama, Jail. The United States has intervened as a plaintiff, and has been granted standing. The defendants are the Sheriff of Houston County, the Houston County Commissioners, the Houston County Board of Health, the Houston County Health Officer, the Alabama Committee of Public Health, the State Health Officer, the State Fire Marshal, the Alabama Board of Corrections, its Commissioner, chairman and members.
 "Plaintiffs and plaintiff-intervenor contend that the acts and practices or failures to act, by defendants have resulted in conditions so deplorable that they constitute violations of plaintiffs' First, Sixth, Eighth and Fourteenth Amendment rights. On February 21, 1977, the Sheriff and the members of the Houston County Board of County Commissioners entered into an agreement with counsel for plaintiffs and plaintiff-intervenor whereby those defendants stipulated that the conditions of the jail were such that the constitutional rights of the inmates had been and were being violated. A trial was held on the remaining issues between plaintiffs and those defendants remaining in the case. This trial was concluded on February 23, 1977. In order to determine whether the State Health Officer and the Alabama Committee on Public Health have deprived plaintiffs of their constitutional rights, it is necessary to know what the duties of these defendants are with respect to whatever conditions the Court finds to exist at the Houston County Jail.
 "(3) 1. Under the law of Alabama, what are the duties of (1) the Alabama Committee of Public Health (the State Board of Health) and (2) the State Health Officer with regard to the sanitary conditions and medical services to be maintained and provided in mates in the Houston County Jail? In particular, does the Alabama Committee of Public Health (the State Board of Health) and/or the State Health Officer have a duty to:
"a. Inspect the Houston County Jail?
 b. Correct or abate unsanitary conditions, conditions which are prejudicial to the health of the inmates or which are likely to become prejudicial to their health? *Page 383 
 c. Discharge the duties of the Houston County Board of Health and/or the Houston County Health Officer in the event that said board or officer fails to discharge its respective duties?
 "2. In title 22, section 7(4), of the Code of Alabama
(Supp. 1973), who are the `proper authorities' to correct or abate any unsanitary or unhealthy conditions found to exist in the Houston County Jail?
 "3. In title 22, section 14(4)(a), of the Code of Alabama (Recomp. 1958), who are the `proper state authorities' charged with the responsibility to take appropriate action in the event that the county officials fail to comply with the recommendations of the county health officer? "This certificate has been prepared by said federal court."
In answer to Certified Question No. 1, we believe that while the powers, jurisdiction and authority of both the Alabama Committee of Public Health and the State Health Officer are quite extensive, their duties, as concerns the sanitary conditions of the Houston County jail, are limited to two specifics. First, the State Health Officer must supervise the county boards of health. Secondly, he must report delinquencies of the county health officers, known to him, to the county boards of health.[1] In other words, should the State Health Officer have knowledge of the malfeasance or misfeasance of the Houston County Health Officer, as regards the Houston County jail, he must promptly report this to the Houston County Board of Health. Tit. 22, §§ 2(3), 9, Code. Because the duties of the Alabama Committee of Public Health and the State Health Officer are thus narrowed, we opine that neither has a duty to inspect the Houston County jail, nor to correct or abate unsanitary conditions; and that neither is legally responsible to discharge the duties placed upon the Houston County Board of Health and/or the Houston County Health Officer, in the event the Houston County Board or Houston County Health Officer fails to discharge their respective duties.
In answer to Certified Question No. 2, we are of the opinion that the Houston County Health Officer and the Houston County Board of Health are the "proper authorities" to call for the correction or abatement of unsanitary conditions in the Houston County jail; and that the Houston County Commission is the "proper authority" to ensure that any unsanitary condition has been abated. Tit. 22, § 8.
In response to Certified Question No. 3, we opine that the "proper state authorities" charged with the responsibility to take appropriate action should the above-named county officials fail to act are the Department of Corrections and Institutions (Board of Corrections) and its Director. Tit. 45, §§ 3, 10(1), 115, 161-62, 166-67, Code.
 I.
In determining the duties of the Alabama Committee of Public Health and the State Health Officer, and determining which agency is responsible for sanitary measures in the Houston County jail, the overall scheme of the statutes, legislative intent and statutory interpretation are of paramount concern.State v. Bryan, 285 Ala. 247, 231 So.2d 118 (1970). This is because our responsibility is to give effect to the legislative intention where it has been manifested. State v. Union Tank CarCo., 281 Ala. 246, 201 So.2d 402 (1967). While this maxim is readily apparent, neither it nor the laws of Alabama clearly indicate what these "proper authorities" are. It is for this reason that legislative history must be explored to determine the intent of the legislature. City of Montgomery v. MontgomeryCity Lines, Inc., 254 Ala. 652, 49 So.2d 199 (1949).
Both appellants and appellees point out significant historical factors. Inspection of *Page 384 
places of confinement began as early as 1883. No. 65, S. 144, §§ 13, 19, 1883 Ala. Acts. A Board of Inspectors, however, was not created until 1885. No. 112, H.B. 623, §§ 1, 3, 17, 26, 1885 Ala. Acts. This Act was amended twice to require the formulation of obligatory rules and the reporting of conditions in county jails. See No. 46, H.B. 885, 1889 Ala. Acts; and No. 138, H.B. 340, 1891 Ala. Acts. An integrated system evolved in 1893, whereby the Board of Inspectors came under the control of the Board of Managers of Convicts. Similarly, this board supervised the County Commission in its immediate control of county jails and convicts. No. 102 1/2, S. 38, §§ 1, 4, 6, 49, 1893 Ala. Acts.
The State came to realize the harshness of local confinement and the need for more centralized control.[2] For this reason, the office of Inspector of Jails was created. The Inspector's duties included visiting each county jail at least twice a year, and securing the best sanitary conditions of the buildings and grounds of all such institutions. To this end, the legislature provided that the Inspector "shall be a practicing physician in good standing, learned in the science of sanitation and hygiene." Ch. 239, § 7212, et seq., Code (1907). This office was abolished in 1935, but the duties were given to the Department of Corrections and Institutions (forerunner to the Board of Corrections) in 1939. See No. 61 H.B. 120, § 1, 1935 Ala. Acts; and No. 91, H.B. 261, § 4, 1939 Ala. Acts.
Though the duties of the State Prison Inspector were delegated to the Department of Corrections and Institutions, § 5 of the Act prevented the transfer of any functions or duties of the state or county boards of health. It must be remembered, however, only the Inspectors had the duty to inspect.
The present use of the words "authority and jurisdiction" in Tit. 22, § 7, Code, derive their existence from the words "right to" in § 702, Code (1907). Obviously, the legislature desired to give the State Health Officer the power to inspect jails without the companion duty to do so. On the contrary, however, the State Prison Inspector was required to inspect the county jails and to secure sanitary conditions therein. § 7215(1), (3), Code (1907).
From the difference in language between Tit. 22, § 7 (" . . . state board of health shall have authority . . . and . . . may discharge [duties] . . . "), and Tit. 22, § 14(4)(a)("It shall be the duty of the county health officer . . . [t]o visit all jails . . . and to make careful investigation . . ."), it appears a power/duty distinction was purposefully created. Without more, the Court may not ignore the plain and usual meaning of words used in a statute. Morgan County Commission v.Powell, 292 Ala. 300, 293 So.2d 830 (1974).
 II.
Tit. 22, § 14, Code, provides that should unsanitary conditions be found to exist in a jail, "proper steps shall be taken by proper authorities to have such conditions corrected or abated." A reading of Tit. 22, §§ 8, 14, 76, Code, reveals that the duty to abate such unsanitary conditions falls upon the county board of health and the county health officer:
 "It shall be the duty of the county boards of health . . . [t]o exercise . . . special supervision over the sanitary conditions of . . . jails . . . and whenever insanitary conditions are found, to use all legal means to have the same abated." Tit. 22, § 8, Code.
Furthermore, the Houston County Judge of Probate and the County Commission are responsible for carrying out the recommendations of the county health officer. Tit. 22, § 14(4)(a), Code.[3] *Page 385 III.
Should these county officials fail to perform their duties, Tit. 22, § 14(4)(a), provides that "it shall be the duty of theproper state authorities to take such appropriate action." (Emphasis added.) Certified Question No. 3 queries to whom this emphasized term refers.
Though this section was originally enacted in 1915, the provision for failure of compliance (cited above) was not added until 1935. On February 9, 1935, the legislature abolished the office of State Prison Inspector. In so doing, the governor was authorized to delegate the duties to some then-existing agency. Clearly, prior to this time, the State Prison Inspector would have been the "proper state authority." However, because the post was abolished, the legislature could not name him as the responsible officer. At the same time, the governor had not appointed any new responsive agency. Therefore, the legislature could do no more, when this Act was passed on September 13, 1935, than delegate the responsibility to the "proper state authority" (i.e., the agency named by the governor).
Apparently, however, the governor never exercised his authority in appointing a responsive agency. For this reason, the prior duties of the State Prison Inspector were assigned to the Department of Corrections and Institutions by the legislature on March 1, 1939.[4] Because this duty would have been placed upon the Inspector, logic indicates that the legislature intended it to fall upon the Inspector's successor — The Department of Corrections and Institutions (the Board of Corrections). The statutes must be read as wholes. AlabamaState Board of Health v. Chambers County, 335 So.2d 653 (Ala. 1976). When read together, Titles 22 and 45, Code, clearly evince this conclusion.
The certifying Court on two prior occasions has held correctly that the Board of Corrections is the proper party-defendant in suits involving conditions in the State, county and municipal correctional facilities. See Pugh v.Locke, 406 F. Supp. 318 (M.D. Ala. 1976); and Washington v. Lee,263 F. Supp. 327 (M.D.Ala. 1966). It is the proper party-defendant in the present action as well.
 Conclusion
For many years, the duty of inspecting local correctional facilities has fallen upon the county boards of health and the county health officers. Upon finding unsanitary conditions, the county health officer reports them to the County Commission and makes recommendations for abatement.
The Code provides that the County Board of Health has theduty to inspect, while the State Board of Health merely has theauthority to inspect. A required inspection by both the county and state agencies would be redundant and wasteful; and clearly, this dual function, though authorized, is not required by the Code.
On the other hand, for many years, the Code has required the Board of Corrections, and its predecessors, to make health and sanitation inspections of the facilities under its control; to continue to do so creates no new burden. The state budget for 1976 provided for inspection by the Board of Corrections; no such expense was included in the State Board of Health's budget.[5]
Should the county health officials or the County Commission fail to act, the Board of Corrections is required to do so. To hold otherwise would emasculate the provisions of Title 45. It must be presumed *Page 386 
that these sections, requiring an inspection by the Board of Corrections, had a meaningful purpose. Fletcher v. TuscaloosaFederal Savings and Loan Ass'n, 294 Ala. 173, 314 So.2d 51
(1975); and Starlite Lanes, Inc. v. State, 283 Ala. 48,214 So.2d 324 (1968).
Had the legislature wished to place such duties upon the State Health Officer or the State Board of Health, it could have done so easily. The State Health Officer is mentioned immediately preceding the failure-of-compliance clause in Tit. 22, § 14. Because different words are used, and the state official is not re-mentioned, it must be presumed some different official is to be responsible in such circumstances. The maxim of expressio unius est exclusio alterius, when coupled with the ease of inclusion if such had been intended, requires this interpretation. See generally, Glencoe Paving Co.v. Graves, 266 Ala. 154, 94 So.2d 872 (1957).
CERTIFIED QUESTIONS ANSWERED.
All the Justices concur.
[1] Under Tit. 22, § 7(4), the State Board of Health has the additional authority to inspect county jails.
[2] Speech of Governor B.B. Comer, delivered to the Legislature, January 15, 1907.
[3] Furthermore, Tit. 30, § 76, mandates that the grand jury make a personal inspection of the condition of the county jail, including the accommodation and health of its prisoners, and cause persons comprising the Court of County Commissioners, at the time the jail is found to be "insufficient," to be indicted.
[4] Thus, the governor was given this authority for over four years; yet, no agency was ever appointed.
[5] No. 763, H.B. 387, 1976 Ala. Acts. Though slaughterhouses are also included under Tit. 22, § 7, the Department of Agriculture and Industries continues health inspections of them. The same is true with inspections of jail facilities; and this for the reason that the inspection is performed by the agency directly authorized to supervise the facility. In the circumstances before us, this is the Board of Corrections.