This is an appeal from a declaratory judgment rendered in the Circuit Court of Montgomery County. Darks Dairy, Inc., and other milk distributors[1] brought this action seeking a declaration that they should not be required to pay the license fees required by tit. 22, § 215, Code of Alabama 1940 (Recomp. 1958).
In January, 1977, the Alabama Dairy Commission terminated both the minimum retail price controls and the minimum and maximum wholesale price controls. Certain milk distributors took the position that the Alabama Dairy Commission, by abolishing the wholesale price control, had also abolished the license fee schedule for milk distributors. Accordingly, they refused to pay their monthly license fees, or paid their license fees under protest. The distributors also filed this action for a declaratory judgment seeking an order: 1) declaring Ala. Code, tit. 22, § 215 (Recomp. 1958) (Supp. 1973)[2]
void, ineffective and without force of law; 2) compelling the escrow and eventual refund of all license fees paid to the Commission pursuant to § 215, subsequent to January 27, 1977; 3) and a permanent injunction restraining the enforcement of § 215 against the distributors.
In April of 1977, while the declaratory judgment action was pending, the Alabama Dairy Commission rejected the distributors' position and issued an order requiring that the distributors pay all delinquent license fees within ten days and that a $50.00 per day fine be imposed on any distributor who failed to pay its license fee.
After hearing evidence, the trial court entered the following judgment:
 1. That the Plaintiffs are required by Section 215, Title 22, Code of Alabama, 1940, (now § 2-13-53
 (c)(2), Code 1975), to pay and the Alabama Dairy Commission is authorized to collect a license fee of two cents for each 100 pounds of milk and controlled milk products processed and sold for human consumption within those areas controlled by the Commission.
 2. That the phrase in Section 215, Title 22, Code of Alabama, 1940, (now § 2-13-53 (c)(2), Code 1975), to wit: `in those areas controlled by the Commission' does not refer to or have any connection with the power of the Alabama Dairy Commission to establish minimum resale milk prices in the State of Alabama.
The applicable Code section provides that
 "[a] distributor shall pay a license fee of two cents ($.02) for each one hundred pounds of milk and controlled milk products *Page 1380 
processed and sold for human consumption in those areas controlled by the commission except when such payment is ordered discontinued as hereinafter provided. A distributor may reduce the number of pounds of milk on which he would otherwise pay a license fee as provided above, by the number of pounds of milk on which a license fee has been paid by a bobtailer as provided herein. It is the intent of this provision to assure that in no event shall more than two cents ($.02) per hundred pounds of milk be ultimately collected as a license fee at the distribution level." (Emphasis added.)
The distributors contend that the emphasized language above is clear and unambiguous; that "controlled" and "in those areas controlled by the commission" refer solely to the products upon which the Alabama Dairy Commission controls the resale price. Alternatively, the distributors contend that if the statute authorizing the collection of license fees be found ambiguous, then the construction placed upon the statute by the body administering the statute is presumed correct. The distributors therefore assert that since 1961, the Alabama Dairy Commission, (prior to 1971, the Alabama Milk Control Board), has construed the license fee as a levy only upon those milk products whose prices were set by the Commission, and that this interpretation should be regarded as binding.
The regulatory scheme enacted by the Legislature for the supervision and regulation of milk is very comprehensive. In addition to controlling prices, the Alabama Dairy Commission is directed to supervise and regulate the fluid milk industry. Ala. Code of 1940, tit. 22, § 205 (Recomp. 1958). These supervisory and regulatory powers include the power to: interalia, designate marketing areas, Ala. Code of 1940, tit. 22, § 209 (Recomp. 1958); promulgate and enforce rules, Ala. Code of 1940, tit. 22, § 211 (Recomp. 1958); enter, inspect, and investigate, Ala. Code of 1940, tit. 22, § 212 (Recomp. 1958); license all persons or entities dealing with fluid milk products, Ala. Code of 1940, tit. 22, § 213 (Recomp. 1958); and require certain periodic reports, Ala. Code of 1940, tit. 22, § 216 (Recomp. 1958). Section 210 of Title 22 of the Alabama Code of 1940 provides that:
 "[t]he diary commission is hereby vested with the powers, and it shall be its duty to supervise and regulate the fluid milk industry of the state of Alabama, including the production, production-distribution, transportation, manufacturing, storage, distribution, delivery, processing, and sale of milk in the state of Alabama . . ."
This broad grant of power to regulate is not consistent with the distributors' position that "controlled" and "in those areas controlled by the Commission" refer only to the Commission's control of wholesale milk prices.
The paragraph immediately following the previously quoted portion of tit. 22, § 215, sets out the license fee scheme for producers; and it provides in pertinent part:
 "A producer shall pay a license fee of two cents ($.02) for each one hundred pounds of milk produced for sale in this state where the prices governing such sale are established by the commission . . ."
(Emphasis added.)
Thus, it is clear that the legislature intended that producers were to pay a license fee only where the commission established the prices governing the sale. It is significant that the legislature did not express a similar intent when it addressed the matter of distributors' license fees.
The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro,292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses;Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956), and words are given their plain and usual *Page 1381 
meaning. Adams v. Mathis, 350 So.2d 381 (Ala. 1977). Moreover, just as statutes dealing with the same subject are in parimateria and should be construed together, League of WomenVoters, supra, parts of the same statute are in pari materia
and each part is entitled to equal weight.
We cannot say that the phrases "controlled milk products" and "in those areas controlled by the commission" evince the legislative intent to tie the distributors' license fee levy to the commission's price control power. The legislature clearly expressed the intent to correlate producers' license fees to price controls and absent an equally clear expression with regard to distributors, we will not strain the construction of the statute to reach the result urged by the appellants.
The appellants earnestly urge us to recognize the significance of the Dairy Commission's interpretation and administration of this statute prior to the abolition of wholesale price controls. While the Commission's interpretation is probative and entitled to some consideration, such administrative construction and interpretation has never been dispositive. Boswell v. Abex Corporation, 294 Ala. 334,317 So.2d 317 (1975).
 "The correct rule is that an administrative interpretation of the governmental department for a number of years is entitled to favorable consideration by the courts; but this rule of construction is to be laid aside where it seems reasonably certain that the administrator's interpretation has been erroneous and that a different construction is required by the language of the statute." (Citations omitted.) 294 Ala. at 336, 317 So.2d at 318.
Moreover, we note that subsequent to the abolition of the wholesale price controls in January, 1977, the Dairy Commission, in its meeting on April 7, 1977, passed a motion which stated in effect, that the distributors who had not paid their license fees were delinquent. Thus, the latest administrative interpretation supports this Court's holding rather than the position of the appellants.
The order of the circuit court declaring the rights and duties of the respective parties is correct and is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and EMBRY, JJ., concur.
[1] The plaintiff-distributors are the appellants in this case. They include: Delview Meadow Gold, Division of Beatrice Foods Company; Darks Dairy, Inc.; Baker Sons Dairy; Barber Pure Milk Company, Birmingham, Inc.; Barber Pure Milk Company, Mobile, Inc.; Barber Pure Milk Company, Montgomery, Inc.; Cloverleaf Dairies; Dairy Fresh Corporation; Dairyland Farms, Division of Beatrice Foods Company; Farmbest, Inc., Montgomery; Meadow Gold Dairies of Alabama, Division of Beatrice Foods Company; Turner Sales Company, Inc.; White Dairy Company, Inc.; Superbrand Dairy and Woodhaven Dairy, Inc.
[2] We refer to the 1940 Code of Alabama citation since this case was tried prior to the effective date of the Code of Alabama, 1975. This particular provision has been recodified at § 2-13-53 (c), 1975 Code of Alabama, and the entire regulatory scheme is set out at § 2-13-1 et seq. 1975 Code of Alabama.